# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 97-1267

———————

Maynard Cooperative Co.,      *
     *
        Appellant,      *
     *
    v.      *   Appeal from the United States
     *   District Court for the
Zeneca, Inc., doing business as   *   Northern District of Iowa
ICI Seeds, formerly doing business   *
as ICI Americans, Inc.,      *
     *
        Appellee.      *

———————

Submitted:   October 21, 1997

Filed:   May 7,1998

———————

Before McMILLIAN, FLOYD R. GIBSON[1] and LAY, Circuit Judges.

———————

McMILLIAN, Circuit Judge.

---

[1]At the panel's conference on October 21, 1997, following oral argument of the case, Judge Floyd R. Gibson concurred in the result reached in this opinion. Judge Gibson has been disabled by illness from reviewing the opinion, which is being filed in the interest of avoiding undue delay.

Maynard Cooperative Co. (Maynard) appeals from a final order entered in the United States District Court[2] for the Northern District of Iowa, granting summary judgment in favor of Zeneca, Inc. (Zeneca), on Maynard's claims of negligence, negligent misrepresentation, breach of an implied warranty of fitness, and contribution or indemnity. Maynard Cooperative Co. v. Zeneca, Inc., No. C94-2063 (N.D. Iowa Dec. 17, 1996) (hereinafter "slip op."). For reversal, Maynard argues that the district court erred in dismissing its claims of negligent misrepresentation and contribution or indemnity under Iowa law. For the reasons stated below, we affirm.

**Jurisdiction**

Jurisdiction in the district court was proper based upon 28 U.S.C. § 1332. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed R. App. P. 4(a).

**Background**

In the spring of 1993, Robert J. McSweeney, Sr., and Robert M. McSweeney, Jr. (the McSweeneys), Iowa dairy farmers, hired Maynard to assist them in an effort to "burn down" a failed alfalfa crop and replace it with a new crop in time to harvest within the same planting season. Maynard consulted Walt Osborne, the area representative for Zeneca, regarding the McSweeneys' circumstances. Osborne suggested to Maynard that the McSweeneys apply two products, Gramoxone (one of Zeneca's products) and 2,4-D (a herbicide produced by another manufacturer), wait seven days, and then replant. Maynard informed the McSweeneys of Osborne's recommendation and then implemented the plan suggested by Osborne. After the Gramoxone and 2,4-D were applied, the failed alfalfa plants were destroyed as

_____

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

expected. However, the new crop (planted seven days later) died, presumably as a result of chemical residue left in the soil.

The McSweeneys made a demand to Maynard for compensation of their losses. Maynard settled with them and obtained a release by the McSweeneys of all claims against Maynard and Zeneca. Maynard then brought the present action against Zeneca in state court, alleging negligence, negligent misrepresentation, breach of an implied warranty of fitness, and contribution or indemnity. Maynard alleged that Osborne gave Maynard bad advice because the correct period of time to wait before replanting, after applying 2,4-D, is twenty-one days, not seven days.

Zeneca removed the case to federal district court on diversity grounds and moved for summary judgment. The district court granted Zeneca's motion and entered judgment for Zeneca on all four counts. The district court held, in relevant part, that the negligent misrepresentation claim was barred under Iowa's "economic loss" doctrine for the following reasons.

> The performance or service expected of the chemicals in this matter was that they would be applied to exterminate a crop, and that they would become harmless within seven days after application, in order that a new crop might be planted. It appears undisputed that the 2,4-D did not become harmless within seven days, and that the replanted crop was unsuccessful as a result. The record demonstrates that the question of how long the 2,4-D would take to become harmless was central to what the application was to accomplish, and therefore the failure to satisfy this performance level was not a hazard peripheral to the product's function.

Slip op. at 5-6 (citing Tomka v. Hoechst Celanese Corp., 528 N.W.2d 103, 106 (Iowa 1995) (Tomka)). The district court also reasoned that, because the economic loss doctrine operated as a legal bar to Zeneca's liability for the alleged harm, Maynard could not recover on a theory of contribution or indemnity as a matter of law.

Accordingly, the district court dismissed that claim in the complaint as well. Id. at 7. This appeal followed.

**Discussion**

We review a grant of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990). We review the district court's determinations of state law *de novo*. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

Maynard argues on appeal that the district court erred in holding, as a matter of Iowa law, that the economic loss doctrine applies under the facts of this case. Maynard argues that the economic loss doctrine only applies where the plaintiff's claim is based upon the alleged failure of a product to meet the plaintiff's commercial expectations. Here, Maynard argues, there is no issue as to whether the chemicals performed their commercially expected function of destroying the first crop. Rather, Maynard argues, the basis of its claim against Zeneca is the incorrect advice given by Osborne that replanting would be safe after seven days. Maynard argues that this case is clearly distinguishable from Tomka, in which the plaintiff was held not to have a tort claim against the manufacturer of a synthetic cattle growth hormone, based upon the failure of that product to perform up to the plaintiff's expectations. In Tomka, the Iowa Supreme Court explained that "the distinguishing central feature of economic loss is .

. . its relation to what the product was supposed to accomplish." 528 N.W.2d at 106; <u>see also</u> <u>Nelson v. Todd's</u> <u>Ltd.</u>, 426 N.W.2d 120, 123-25 (Iowa 1988) (discussing economic loss doctrine).

Moreover, Maynard contends, it has sufficiently established its claims of negligent misrepresentation and contribution or indemnity to withstand a motion for summary judgment. Maynard notes that the elements of a negligent misrepresentation claim under Iowa law are defined in the Restatement (Second) of Torts § 552 (1977). <u>See, e.g.</u>, <u>Haupt v. Miller</u>, 514 N.W.2d 905, 909-10 (Iowa 1994) (<u>Haupt</u>). In <u>Haupt</u>, the Iowa Supreme Court stated:

> Our court has recognized the tort of negligent misrepresentation. . . . [S]ection 552 of the Restatement (Second) of Torts (1977) . . . details the necessary proof as follows:
>
>> One who, in the course of his [or her] business, profession or other employment, or in any other transaction in which he [or she] has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information.

Maynard argues that, in the present case, the district court erred in dismissing its negligent misrepresentation claim on summary judgment because genuine issues of material fact remain as to whether: (1) Zeneca was in the business of supplying information; (2) Zeneca had a pecuniary interest in supplying the information; (3) the information supplied was false; (4) Zeneca intended to supply the information for the benefit of Maynard or its customers; (5) Zeneca intended the information to influence Maynard or its customers; (6) Maynard acted in reasonable reliance upon the truth of

the information supplied by Zeneca; and (7) Maynard sustained damage as a proximate result of the false information supplied by Zeneca.[3]

In addition, Maynard argues that it sufficiently established a claim for contribution or indemnity to survive Zeneca's summary judgment motion because: Zeneca is a joint-tortfeasor vis-a-vis the harm done to the McSweeneys; Maynard fully paid the McSweeneys and obtained a release of the McSweeneys' claims against both Maynard and Zeneca; and the McSweeneys had a viable negligent misrepresentation claim against Zeneca which was separate from Maynard's claim.

We agree with the district court's application of the economic loss doctrine to the present case. The district court correctly interpreted Maynard's negligent misrepresentation claim as essentially based upon the failure of 2,4-D to meet Maynard's commercial expectation that the chemical would dissipate within seven days. The failure of the 2,4-D to perform in that respect was the cause of the McSweeneys' damages. Moreover, Maynard is seeking to recover compensation for a purely economic loss – namely, the amount of money it paid to compensate the McSweeneys. The distinction drawn by Maynard between the *advice* given by Zeneca and the *product* about which the advice was given is, in our opinion, a distinction without a difference. Cf. Bailey Farms, Inc. v. NOR-AM Chemical Co., 27 F.3d 188, 191-92 (6th Cir. 1994) (holding that a farmer had to seek a remedy under the UCC for consequential losses for property damage resulting from the failure of an agricultural product to perform as expected, notwithstanding farmer's argument that the product worked properly but he was misinformed about its proper use). Even though Maynard may not have had a claim against Zeneca under the UCC or contract theories, the

---

[3]In support of the assertions that Zeneca was in the business of supplying the information in question and had a "pecuniary interest" in supplying the information, Maynard highlights Osborne's statement in his deposition that part of his job was "[t]o increase the market share of [his] company's products." Joint Appendix at 132 (deposition of Walt Osborne).

economic loss doctrine still applies to its negligent misrepresentation claim. In <u>Tomka</u>, 528 N.W.2d at 107-08, the Iowa Supreme Court enforced the economic loss doctrine to dismiss a negligent misrepresentation claim against a manufacturer because the only damages sought by the plaintiff were economic damages which clearly fell within contract warranty theories, not tort theories, even though the plaintiff had no claim against the manufacturer for breach of implied warranties.

We also hold that Maynard's negligent misrepresentation claim fails as a matter of law under the Restatement (Second) of Torts § 552, because Maynard cannot, as a matter of law, show at least three essential elements of its claim. First, Zeneca was not in the business of supplying information but, rather, offered advice and information merely as a service provided in connection with its retail operations, notwithstanding Osborne's generalized statement that part of his job was "[t]o increase the market share of [his] company's products." Joint Appendix at 132 (deposition of Walt Osborne). <u>See, e.g.</u>, <u>Meier v. Alfa-Laval, Inc.</u>, 454 N.W.2d 576, 581 (Iowa 1990) (holding that the defendant, a seller and dealer of a milking machine, owed no duty of care for purposes of a negligent misrepresentation claim based upon statements made in connection with the machine's repair, because the defendant was not in the business of supplying information) (cited in <u>Haupt</u>, 514 N.W.2d at 910). Second, Zeneca did not have a pecuniary interest in supplying information to Maynard regarding 2,4-D, because that product was manufactured by a different company. Third, Maynard could not reasonably rely on the truth of the advice given by a Zeneca representative regarding the correct use of another manufacturer's product. On this latter point, Maynard could have, and clearly should have, consulted with the manufacturer of 2,4-D before using that product in the manner suggested by Osborne. Thus, it is beyond genuine dispute that Maynard's reliance solely on Osborne's advice regarding 2,4-D was not justified.

In short, the district court correctly held that Maynard has failed, as a matter of law, to establish any basis in tort for imposing liability on Zeneca for the losses

sustained by the McSweeneys and compensated by Maynard. Stated differently, Zeneca is <u>not</u> a joint-tortfeasor vis-a-vis the harm done to the McSweeneys, despite Maynard's assertion to the contrary. Consequently, Maynard cannot, as a matter of law, recover on a theory of contribution or indemnity.

## Conclusion

Accordingly, we hold that the district court did not err in holding that Zeneca is entitled to judgment as a matter of law on Maynard's claims of negligent misrepresentation and contribution or indemnity. The order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.