# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1025

_____

Dannix Painting, LLC

*Plaintiff - Appellant*

v.

Sherwin-Williams Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2013
Filed: October 21, 2013

_____

Before RILEY, Chief Judge, BRIGHT and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

In this diversity case, see 28 U.S.C. § 1332(a), Dannix Painting, LLC (Dannix), a Mississippi limited liability company whose sole member is a Missouri resident, appeals the dismissal of its Missouri tort action against the Sherwin-Williams Company (SWC), an Ohio corporation. Dannix alleged SWC negligently misrepresented a certain paint product SWC sold was appropriate for a particular

painting project. Dannix argues the district court[1] erroneously concluded Dannix failed to state a claim because Missouri's[2] economic loss doctrine barred Dannix's only cause of action. We affirm.

## I.    BACKGROUND

Dannix, a commercial painting contractor, used a product manufactured by SWC to paint some buildings at Eglin Air Force Base in Florida, but the finish was defective. When Dannix sought assistance from SWC, SWC recommended an alternative product. When that product proved unacceptable due to noxious odors, an SWC employee suggested a third product. On the SWC employee's recommendation, Dannix used the third product on both interior and exterior surfaces, complying with all the manufacturer's recommendations. This product also failed. The paint "delaminated"[3] on both interior and exterior surfaces, causing Dannix to suffer financial loss when Dannix had to remove the defective paint and redo the work.

On August 13, 2012, Dannix sued SWC in Missouri state court for negligent misrepresentation in recommending the third product. Dannix asserted SWC "failed to exercise reasonable care or competence in investigating the accuracy of its recommendation and in specifying the [r]ecommended [p]roduct." On September 12, 2012, SWC removed the case to the Eastern District of Missouri based on diversity jurisdiction. SWC then moved to dismiss under Federal Rule of Civil Procedure

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]The parties agree Missouri law applies. See Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc., 528 F.3d 556, 561 n.4 (8th Cir. 2008) (assuming Missouri law applied where both parties relied on it).

[3]At oral argument, Dannix explained the term "delaminated," as used in the complaint, means the paint "didn't stick" because "it did not have the chemical and bonding properties that allowed it to adhere to the surface to which it was applied."

12(b)(6) for failure to state a claim, arguing the economic loss doctrine barred Dannix's complaint under Missouri law.

On December 3, 2012, the district court concluded Dannix's claim for "negligent misrepresentation [was] barred by Missouri's economic loss doctrine." Noting "Missouri courts have recognized rare exceptions to the economic loss doctrine" for "cases involving a fiduciary relationship," see, e.g., Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 193 (Mo. Ct. App. 2010), "negligence in providing professional services," see, e.g., Business Men's Assur. Co. of Am. v. Graham, 891 S.W.2d 438, 454 (Mo. Ct. App. 1994), and breach of a public duty, see, e.g., B.L. Jet Sales, Inc. v. Alton Packaging Corp., 724 S.W.2d 669, 672-73 (Mo. Ct. App. 1987), the district court determined Dannix's claim did "not fall within any of those recognized exceptions." Refusing to "expand Missouri law to create a new one," the district court dismissed Dannix's complaint. Dannix timely appealed.

## II. DISCUSSION
### A. Standard of Review

"We review *de novo* the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting [Dannix's] factual allegations as true and construing all reasonable inferences in favor of [Dannix]." Alexander v. Hedback, 718 F.3d 762, 765 (8th Cir. 2013). "'As a federal court, our role in diversity cases is to interpret state law, not to fashion it.'" Kingman v. Dillard's, Inc., 643 F.3d 607, 615 (8th Cir. 2011) (quoting Orion Fin. Corp. v. Am. Foods Grp., Inc., 281 F.3d 733, 738 (8th Cir. 2002)). "'When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri. If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law.'" Id. (quoting Eubank v. Kan. City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010)).

**B.     Economic Loss**

The only issue in this case is whether the district court erred in deciding Missouri's economic loss doctrine precluded Dannix's negligent misrepresentation claim. Anticipating how the Missouri Supreme Court would rule on this issue, we conclude the district court did not err.

"[D]istinguished from harm to person or damage to property," economic, or commercial, "'loss includes cost of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.'" Groppel Co. v. U.S. Gypsum Co., 616 S.W.2d 49, 55 n.5 (Mo. Ct. App. 1981) (quoting Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co., 544 P.2d 306, 309-10 (Idaho 1975)). Economic loss also includes "'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" Chi. Heights Venture v. Dynamit Nobel of Am., Inc., 782 F.2d 723, 727 (7th Cir. 1986) (Illinois law) (quoting Moorman Mfg. Co. v. Nat'l Tank Co., 435 N.E.2d 443, 449 (Ill. 1982)).

The economic loss doctrine prohibits a commercial buyer of goods "from seeking to recover in tort for economic losses that are contractual in nature." Autry Morlan, 332 S.W.3d at 192 (tracing "[t]he roots of the economic loss doctrine" in Missouri to Crowder v. Vandendeale, 564 S.W.2d 879, 884 (Mo. 1978) (en banc)). Expanding tort principles into the commercial arena risks drowning "contract law . . . in a sea of tort." E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866 (1986). While public policy may warrant allowing tort remedies to provide "more protection from dangerous products than is afforded by the law of warranty," id. (citing Seely v. White Motor Co., 403 P.2d 145, 149 (Cal. 1965) (In Bank)), "loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law," id. at 870.

-4-

"In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 615 (7th Cir. 2001) (Illinois law) (quoting Collins v. Reynard, 607 N.E.2d 1185, 1188 (Ill. 1992) (Miller, C.J., concurring)). "[A]lthough tort law is an appropriate vehicle for providing a recovery for physical injury to persons or to other property caused by defective goods, tort law should not be held to undermine the law of sales' balancing of the relationship between buyers and sellers regarding whether or not, and how well, products work." Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co., 984 F.2d 915, 918 (8th Cir. 1993); accord Forrest v. Chrysler Corp., 632 S.W.2d 29, 31 (Mo. Ct. App. 1982).

"The doctrine was judicially created to protect the integrity of the [Uniform Commercial Code (U.C.C.)] bargaining process; it prevents tort law from altering the allocation of costs and risks negotiated by the parties." Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 882 (8th Cir. 2000) (Minnesota law); see, e.g., Mo. Rev. Stat. §§ 400.2-303 (risk allocation), 400.2-313 to -316 (warranties), 400.2-719 (limitation of remedies). "[C]ontract law, and the law of warranty in particular, is better suited for dealing with purely economic loss in the commercial arena than tort law, because it permits the parties to specify the terms of their bargain and to thereby protect themselves from commercial risk." Dakota Gasification Co. v. Pascoe Bldg. Sys., a Div. of Amcord, Inc., 91 F.3d 1094, 1098 (8th Cir. 1996) (North Dakota law); accord Crowder, 564 S.W.2d at 884.

### 1.    Negligent Misrepresentation

"Under Missouri law, remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC." Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 130-31 (Mo. 2010) (en banc). Missouri's economic loss doctrine bars recovery for negligence, see R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d

818, 828-29 (8th Cir. 1983), and strict liability "where the only damage is to the product sold," Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co., 703 S.W.2d 901, 903 (Mo. 1986) (en banc).

Recognizing the severe limitations imposed by the economic loss doctrine, Dannix is adamant it does not make a straight defect claim.  Instead, Dannix asserts a claim for negligent misrepresentation based on SWC's product recommendation, "seeking damages for the loss it suffered when the recommended product proved unsuitable."[4]  According to Dannix, the economic loss doctrine does not apply to its negligent misrepresentation claim because Dannix faults SWC's recommendation rather than its product.  Dannix's attempt to circumvent the U.C.C. bargaining process and avoid the parties' agreed allocation of risk is unavailing.

Dannix has not cited, and we are unable to find, a Missouri case allowing a commercial buyer of goods under the U.C.C. to maintain a negligent misrepresentation claim against the seller based upon the seller's recommendation as to the fitness or performance of those goods.[5]  See Bruce Martin Constr., Inc. v. CTB,

---

[4]Dannix is not alone.  As courts have applied the economic loss doctrine to bar claims for economic loss under negligence and strict liability theories, claims for negligent misrepresentation have risen significantly.  See Anthony Niblett, Richard A. Posner, & Andrei Shleifer, The Evolution of a Legal Rule, 39 J. Legal Stud. 325, 346 (2010).

[5]Renaissance Leasing, relied upon by Dannix, is not to the contrary.  In Renaissance Leasing, the Missouri Supreme Court permitted a negligent misrepresentation claim by a financier who loaned an additional $70,000 toward the purchase price of a piece of mining equipment based on the manufacturer's purported misrepresentation that the equipment could be repaired or modified to perform certain essential tasks.  Id. at 117-18, 135-36.  But the financier was not the buyer of the goods.  His tort claim involved different grounds and different damages from any warranty claims arising from the equipment purchase.  Id.  The court determined any negligent misrepresentation claim the buyer might have had was inadequately pled.

-6-

Inc., No. 1:10CV205SNLJ, 2012 WL 718624, at *3 (E.D. Mo. Mar. 6, 2012) (recognizing "the Missouri Supreme Court has not addressed this issue"). Although the Missouri state courts have not specifically addressed whether a commercial buyer may recover for disappointed commercial expectations based on a theory of negligent misrepresentation, the Missouri courts' steady application of the economic loss doctrine leads us to conclude the district court did not err in holding the doctrine bars Dannix's negligent misrepresentation claim. See R.W. Murray Co., 697 F.2d at 828 ("Other recent Missouri decisions, while not directly addressing the negligence question presented in the instant case, make it clear that the basic principle announced in Crowder is applicable to actions seeking recovery for economic loss arising from defective products in the U.C.C. sale of goods context.").

In adopting the economic loss doctrine in Crowder, the Missouri Supreme Court determined "the liability imposed for mere deterioration or loss of bargain resulting from latent . . . defects is contractual" and adequately remedied by a potential warranty claim. Crowder, 564 S.W.2d at 881. Applying the doctrine to strict liability claims in Sharp Brothers, the court explained, "'[C]ontract law and the rules pertaining to contract restrictions on warranty liability should control [claims for harm to the product] rather than the rules and principles of tort law'" because "'the risk of

---

Id. at 136.

The lack of any discussion of the economic loss doctrine in Renaissance Leasing also deprives that case of any precedential value with respect to whether the doctrine bars Dannix's negligent misrepresentation claim. "The maxim of stare decisis applies only to decisions on points arising and decided in causes." Broadwater v. Wabash R. Co., 110 S.W. 1084, 1086 (Mo. 1908) (quotation omitted); see also State ex rel. Baker v. Goodman, 274 S.W.2d 293, 297 (Mo. 1954) (en banc) ("There is no doctrine better settled than that the language of judicial decisions must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision.").

harm to the product itself due to the condition of the product would seem to be a type of risk that the parties to a purchase and sale contract should be allowed to allocate pursuant to the terms of the contract[,] . . . especially . . . as regards transactions involving commercial or industrial products.'" Sharp Bros., 703 S.W.2d at 902-03 (quoting Prosser & Keeton on the Law of Torts, § [101](3) (5th ed. 1984) (footnotes omitted)). As the United States Supreme Court stated, "Given the availability of warranties, the courts should not ask tort law to perform a job that contract law might perform better."[6] Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 880 (1997).

This reasoning applies with full force to Dannix's negligent misrepresentation claim. See AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir. 1998) (deciding "the Minnesota Supreme Court would extend the doctrine to other kinds of torts asserted by commercial claimants in cases where the policies underlying [the economic loss doctrine] favor limiting remedies to those in the U.C.C."). Dannix "seek[s] damages for the loss it suffered when the recommended product proved unsuitable." This is precisely the type of tort claim by a disappointed commercial buyer that the economic loss doctrine prohibits. See Saratoga Fishing Co., 520 U.S. at 879-80 (holding warranty law "set[s] the responsibilities of a seller of a product that fails to perform the function for which it was intended") (citing East River, 476 U.S. at 872-73); Marvin Lumber, 223 F.3d at 885 n.1 (same); Chi. Heights Venture, 782

---

[6]The record is not entirely clear, but SWC asserts Dannix's contract with SWC limited the availability of the U.C.C. remedies. See Mo. Rev. Stat. §§ 400.2-316 (exclusion or modification of warranties), 400.2-719 (modification or limitation of remedies). As explained in Saratoga Fishing Co., Dannix could have negotiated to receive greater warranties to "set the terms of compensation for product failure" and been compensated for its loss. Saratoga Fishing Co., 520 U.S. at 880. Because Dannix did not negotiate such warranties, it "likely receive[d] a lower price in return." Id. Allowing Dannix to maintain a negligent misrepresentation claim at this point would rewrite the parties' contract and reallocate the risk of loss. Id.

F.2d at 727 (quoting <u>Moorman Mfg.</u>, 435 N.E.2d at 449 (explaining warranty law "protect[s] expectations of suitability and quality")).

> Where there are well-developed contractual remedies, such as the remedies that the [U.C.C.] (in force in all U.S. states) provides for breach of warranty of the quality, fitness, or specifications of goods, there is no need to provide tort remedies for misrepresentation. The tort remedies would duplicate the contract remedies, adding unnecessary complexity to the law. Worse, the provision of these duplicative tort remedies would undermine contract law.
>
> . . . .
>
> [T]he "economic loss" doctrine . . . forbids commercial contracting parties (as distinct from consumers, and other individuals not engaged in business) to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain.

<u>All-Tech Telecom, Inc. v. Amway Corp.</u>, 174 F.3d 862, 865-66 (7th Cir. 1999) (Wisconsin law).

We reached the same conclusion in <u>Maynard Co-op. Co. v. Zeneca, Inc.</u>, 143 F.3d 1099, 1101-02 (8th Cir. 1998) (Iowa law), in which the buyer of a herbicide argued the economic loss doctrine did not apply to its negligent misrepresentation claim against the manufacturer because the "chemicals performed their commercially expected function of destroying the first crop." <u>Id.</u> at 1101. The buyer argued the basis of its claim against the manufacturer was not a product defect, but was "the incorrect advice given by" the manufacturer's representative regarding the safety of replanting after the herbicide was applied. <u>Id.</u>

We affirmed the trial court's application of the economic loss doctrine, concluding "[t]he district court correctly interpreted [the buyer's] negligent misrepresentation claim as essentially based upon the failure of [the herbicide] to meet

[the buyer's] commercial expectation that the chemical would" perform as described, causing damage to the replanted crop. Id. at 1102. We rejected the buyer's distinction "between the *advice* given by [the manufacturer] and the *product* about which the advice was given" as "a distinction without a difference." Id. We also concluded the buyer could not establish a negligent misrepresentation claim because the manufacturer "was not in the business of supplying information but, rather, offered advice and information merely as a service provided in connection with its retail operations." Id. at 1103. Both rationales apply to Dannix's claim.

In Marvin Lumber, we affirmed the dismissal of the fraud and misrepresentation claims of a window and door manufacturer against the supplier of a wood preservative that "did not meet [the buyer's] expectations in preventing wood rot and deterioration." Marvin Lumber, 223 F.3d at 875, 885. We determined the trial court properly applied the reasoning from Huron Tool & Eng'g Co. v. Precision Consulting Servs., 532 N.W.2d 541, 545 (Mich. Ct. App. 1995), that posits "in cases 'where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold,' the economic loss doctrine bars the fraud claims because the fraud claims are substantially redundant with warranty claims." Marvin Lumber, 223 F.3d at 885 (quoting Huron, 532 N.W.2d at 545).

We noted the manufacturer's "fraud claims all revolve[d] around one central allegation: [the supplier of the preservative] misle[d] [the buyer] into believing that [the preservative] would be an effective product, but [the preservative] failed. The only harms alleged arose from [the preservative's] inefficacy." Id. at 885 n.1. Recognizing "commercial parties may protect themselves against the risk of product failure by securing warranties," we determined allowing the buyer to resurrect time-barred warranty claims in "tort would be precisely the kind of subversion of the U.C.C. that the economic loss doctrine is intended to prevent." Id.

Dannix fails to point to anything in Missouri law that would compel a different result.[7]  At root, Dannix's negligent misrepresentation claim derives from its disappointed commercial expectations—the paint it bought "didn't stick" as expected (an adhesion failure).  That failure "is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain."  East River, 476 U.S. at 868.

> [T]ort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law . . . . [C]ommercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage. A disputant should not be permitted to opt out of commercial law by refusing to avail himself of the opportunities which that law gives him.

Schreiber Foods, Inc. v. Lei Wang, 651 F.3d 678, 680-81 (7th Cir. 2011) (alterations and omissions in original) (quoting Miller v. U.S. Steel Corp., 902 F.2d 573, 574-75 (7th Cir. 1990)).  "[S]ee[ing] no cause to judicially emasculate the warranty provisions of the UCC," Gibson v. Reliable Chevrolet, Inc., 608 S.W.2d 471, 475 (Mo. Ct. App. 1980), we agree with the district court that Missouri's economic loss doctrine bars Dannix's negligent misrepresentation claim.

---

[7]To the contrary, the Missouri federal district courts considering this issue have consistently concluded "a claim for negligent misrepresentation is barred by Missouri's economic loss doctrine in a merchant-to-merchant sale of allegedly defective goods where there has been no personal injury or damage to property and the plaintiff seeks recovery for only economic loss." Bruce Martin, 2012 WL 718624, at *5; accord Self v. Equilon Enters., LLC, No. 4:00CV1903TA, 2005 WL 3763533, at *11 (E.D. Mo. Mar. 30, 2005); Collegiate Enters., Inc. v. Otis Elevator Co., 650 F. Supp. 116, 118 (E.D. Mo. 1986).

### 2. Other Property Damage

We also reject Dannix's contention that "the facts set forth in the [c]omplaint fall within the other property damage exception to the economic loss doctrine." See Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc., 925 F. Supp. 624, 635 (E.D. Mo. 1996) ("[W]here damage is claimed to property other than the product sold, the economic loss doctrine is not applicable."). Dannix's complaint does not set forth any allegations of property damage to surfaces Dannix painted. The complaint simply alleges Dannix suffered a pecuniary loss when the paint "failed, resulting in delamination of surfaces on the exterior and some interior areas, and resulting in financial loss to [Dannix]." In other words, because the SWC paint "didn't stick" to some of the surfaces Dannix painted, Dannix incurred costs to remove the defective paint and refinish the surfaces with a different product. Dannix alleges economic, or commercial, loss—not other property damage. See Chi. Heights Venture, 782 F.2d at 727; Groppel Co., 616 S.W.2d at 55 n.5.

The district court correctly dismissed Dannix's negligent misrepresentation complaint.

## III. CONCLUSION

We affirm.

_____