# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1843

_____

Graham Construction Services, Inc.

*Plaintiff - Appellee*

v.

Hammer & Steel Inc.

*Defendant - Appellant*

_____

No. 13-1906

_____

Graham Construction Services, Inc.

*Plaintiff - Appellant*

v.

Hammer & Steel Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2014
Filed: June 13, 2014

_____

Before GRUENDER, BRIGHT, and MELLOY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

This dispute arose between the lessor of drilling equipment, Hammer & Steel, Inc. (H&S), and its lessee, Graham Construction Services, Inc. (Graham), over the lease of drilling equipment for the construction of an underground water shaft. As a result of the unsatisfactory performance of the equipment, Graham brought several claims for damages against H&S. H&S filed counterclaims seeking certain damages not paid under the lease, as well as the value of an auger that was lost during the drilling process. The jury awarded Graham $420,194.40 in economic losses on its negligent misrepresentation claim. As to the counterclaims, the jury awarded H&S $197,238 for breach of contract plus an award made by the district court of an additional $52,387 for the value of the lost auger. H&S appeals the jury's award to Graham on the ground that it is barred by the economic loss doctrine. Graham appeals the district court's award of the value of the auger as well as the district court's refusal to submit Graham's defenses to the jury. Having jurisdiction under 28 U.S.C. § 1291, we (1) vacate the jury award of $420,194.40 for negligent misrepresentation in favor of Graham and enter judgment in favor of H&S on that claim and (2) vacate both the jury award of $197,238 in favor of H&S on its breach of contract claim and the district court's award of $52,387 in favor of H&S for loss of the auger and remand for a new trial on damages as to those claims.

## I.    Background

Graham is a contractor located in Eagan, Minnesota. In August 2009, Graham obtained information to bid for the construction of a raw water intake structure ("the project") for the city of Parshall, North Dakota. The project required the construction of an underground shaft for a water storage unit, which in turn required drilling a 96-foot-deep, 14-foot-wide shaft and lining it with concrete.

If Graham received the bid, it intended to execute the drilling itself. However, because Graham did not have the requisite equipment, Graham's senior project manager, Quint McDermand, contacted Todd Maxa, a salesperson for H&S, about leasing drilling equipment. According to McDermand, Maxa represented that H&S "could provide a drill rig to do the job." Although Graham did not win the bid, it subcontracted with the winning bidder to perform the project for a reduced price. Graham's subcontract was based on its original estimate of the project cost, which took into account the price that H&S had provided for leasing the equipment.

In September 2009, Graham met with an engineer to design a drill platform at the project site. Maxa attended the meeting to provide information regarding the drill that Graham had selected—the SANY SR 250. Soon thereafter, H&S sent Graham the rental agreement for the SANY SR 250 drill and a 60-inch auger. McDermand later testified that he signed the lease agreement but did not read the fine print because he was confident that H&S was providing appropriate equipment for the project. The agreement included clauses under which Graham "acknowledge[d] that [it] has selected the equipment . . . based entirely and solely on [its] judgment" and agreed that it "is not relying on [H&S] regarding proper use of this equipment or installation or removal techniques."

Graham encountered several obstacles during the drilling process. In January 2010, a component of the drill called the "Kelly bar" broke, resulting in the 60-inch auger falling to the bottom of the shaft. Despite this setback, H&S confirmed that the drill was "more than enough machine" to complete the project. The Kelly bar broke on two more occasions while Graham attempted to recover the auger from the bottom of the shaft. After the third break in July 2010, McDermand sent Maxa an email stating his understanding that the Kelly bar could not withstand the torques and pressures required to drill the shaft. H&S arranged for the removal of the drill from

the project site. Graham was forced to abandon the shaft, locate a replacement drill rig, and redrill a new shaft.

In March 2012, Graham filed an amended complaint against H&S alleging various causes of action, including negligent misrepresentation. H&S filed counterclaims asserting (i) breach of contract, (ii) unjust enrichment, (iii) breach of express warranties, and (iv) a claim for delivery or the value of the lost auger. The parties tried the claims to a jury in January 2013. After the close of evidence, H&S moved for judgment as a matter of law (JMOL) under Fed. R. Civ. P. 50(a) on its counterclaim for breach of contract and on various claims brought by Graham, including negligent misrepresentation. With respect to the negligent misrepresentation claim, H&S argued, in relevant part, that Missouri's economic loss doctrine barred Graham's recovery on that claim. Graham also moved for JMOL on H&S's claims of unjust enrichment, breach of express warranties, and the value of the auger. The district court denied the motions.

The jury returned a verdict in favor of H&S for its breach of contract claim in the amount of $197,238 and in favor of Graham for its negligent misrepresentation claim in the amount of $420,194.40.

H&S subsequently filed a motion for post-verdict JMOL under Fed. R. Civ. P. 50(b) on Graham's negligent misrepresentation claim. H&S also moved for JMOL on its claim for the value of the auger. The district court granted judgment in favor of H&S on its claim for the value of the auger in the amount of $52,387, but denied H&S's motion for judgment on Graham's negligent misrepresentation claim.

Graham moved for post-verdict JMOL on three of the four counterclaims raised by H&S. As relevant to this appeal, Graham argued that H&S's claim for the value of the auger was barred by Graham's affirmative defense of unclean hands. Graham

-4-

also argued that H&S was equitably estopped from bringing its breach of contract claim. The district court denied the motions and entered judgments as noted above.

On appeal, H&S argues that the district court erred in denying its motion for JMOL on Graham's negligent misrepresentation claim.

On cross appeal, Graham raises three claims: (1) the defense of equitable estoppel bars any recovery on H&S's breach of contract claim; (2) the district court abused its discretion by failing to instruct the jury on Graham's defenses of estoppel and mitigation; and (3) the defense of unclean hands bars H&S's recovery on its claim for the value of the auger.

The parties agree that Missouri law governs this case.

## II.   Discussion
### A. H&S's Appeal: Negligent Misrepresentation
On appeal, H&S argues that the district court erred in denying JMOL in its favor on Graham's negligent misrepresentation claim.

"We review de novo the district court's denial of a motion for judgment as a matter of law, using the same standards as the district court." *Howard v. Mo. Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

H&S contends that Missouri's economic loss doctrine bars Graham from recovering under a negligent misrepresentation theory. H&S asserts that Graham's remedies are contractual in nature and limited to those available in the rental

agreement. In contrast, Graham argues that Missouri courts permit recovery of economic losses under the tort of negligent misrepresentation.

The economic loss doctrine prohibits a party "from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). "[C]ontract law, and the law of warranty in particular, is better suited for dealing with purely economic loss in the commercial arena than tort law, because it permits the parties to specify the terms of their bargain and to thereby protect themselves from commercial risk." *Dakota Gasification Co. v. Pascoe Bldg. Sys., a Div. of Amcord, Inc.*, 91 F.3d 1094, 1098 (8th Cir. 1996) (applying North Dakota law). Under Missouri law, "[r]ecovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, No. ED 100569, 2014 WL 1612643, at *7, __ S.W.3d __, __ (Mo. Ct. App. Apr. 22, 2014).

We conclude that the economic loss doctrine bars Graham's recovery on its negligent misrepresentation claim. Our recent decision in *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902 (8th Cir. 2013), requires this result. In that case, an employee from the Sherwin-Williams Company (SWC) recommended that Dannix Painting, LLC, (Dannix) use a particular product to paint buildings at the Eglin Air Force Base in Florida. *Id.* at 904. The paint delaminated on both interior and exterior surfaces resulting in financial loss to Dannix. *Id.* Dannix sued SWC, alleging that SWC negligently misrepresented that a particular type of paint was suitable for the project when, in fact, it was not. *Id.* at 906. On appeal from the district court's dismissal of the claim, we held that Dannix's claim for damages it incurred when the recommended product proved unsuitable "is precisely the type of tort claim by a disappointed commercial buyer that the economic loss doctrine prohibits." *Id.* at 908. We emphasized that we could not locate "a Missouri case allowing a commercial

buyer of goods under the U.C.C. to maintain a negligent misrepresentation claim against the seller based upon the seller's recommendation as to the fitness or performance of those goods." *Id.* at 907. Because Dannix sought recovery of purely economic (i.e. pecuniary) damages through its negligent misrepresentation claim, we concluded that the economic loss doctrine bars recovery on that claim. *Id.* at 910.

Similarly, Graham alleges that "H&S's assurances and representations" about the suitability of the drilling equipment for its project were "a direct and proximate cause" of the damages it incurred. The basis of Graham's negligent misrepresentation claim—that H&S failed to exercise reasonable care in assuring the suitability of the drilling equipment—"is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 909. In effect, "[a]llowing [Graham] to maintain a negligent misrepresentation claim at this point would rewrite the parties' contract and reallocate the risk of loss." *Id.* at 908 n.6. Because Graham seeks purely economic damages through its negligent misrepresentation claim, we conclude that the economic loss doctrine bars recovery on that claim. *See Autry Morlan*, 332 S.W.3d at 192.

Accordingly, we reverse the district court's denial of JMOL on Graham's negligent misrepresentation claim, vacate the jury award in favor of Graham, and enter judgment in favor of H&S on Graham's claim for negligent misrepresentation.[1] *See Weisgram v. Marley Co.*, 528 U.S. 440, 451-52 (2000) (stating that "if a court of appeals determines that the district court erroneously denied a motion for judgment as a matter of law, the appellate court may . . . direct the entry of judgment as a matter of law for the defendant").

---

[1]We observe that this case provides yet another example of the federal judiciary applying Missouri's economic loss doctrine without clear guidance from the Missouri Supreme Court.

**B. Graham's Cross Appeals**

On cross appeal, Graham raises three claims: (1) the defense of equitable estoppel bars H&S's recovery on its breach of contract claim; (2) the district court abused its discretion by failing to instruct the jury on Graham's defenses of estoppel and mitigation; and (3) the defense of unclean hands bars H&S's recovery on its claim for the value of the auger.

### 1. Equitable Estoppel as a Matter of Law

Graham first argues that the district court erred in denying JMOL in its favor on H&S's breach of contract claim because Graham's defense of equitable estoppel bars the claim as a matter of law. H&S asserts that Graham waived its argument because Graham did not seek JMOL with respect to H&S's breach of contract claim in an initial Rule 50(a) motion.

Federal Rule of Civil Procedure 50(a)(2) provides that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Federal Rule of Civil Procedure 50(b) provides for renewing the motion after trial. "[W]e have no basis for review of [an] issue" when the party fails to raise that issue in a Rule 50(a) motion. *Day v. Toman*, 266 F.3d 831, 837 (8th Cir. 2001); *see also* Fed. R. Civ. P. 50(b) advisory comm. notes to 1991 amendment ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 821 (8th Cir. 2004) ("[A] motion for judgment as a matter of law at the close of the evidence preserves for review only those grounds specified at the time, and no others." (citation omitted) (internal quotation marks omitted)); *Browning v. President Riverboat Casino-Mo., Inc.*, 139 F.3d 631, 636 (8th Cir. 1998) (same). "Adherence to the rule is mandatory." *Conseco*, 381 F.3d at 821.

After the close of evidence, Graham moved for judgment as a matter of law on three claims: (1) its claim for breach of express warranty, (2) H&S's claim of unjust

enrichment, and (3) H&S's claim for the value of the auger. Graham did not move for JMOL as to H&S's claim for breach of contract until *after* the verdict through a Rule 50(b) motion. Graham's failure to raise this challenge in a Rule 50(a) motion waived the opportunity to raise it after trial. *See Day*, 266 F.3d at 837. Accordingly, we have no basis to conclude that the doctrine of equitable estoppel bars H&S's breach of contract claim as a matter of law.

### 2. Failure to Instruct on Equitable Estoppel

Next, Graham argues that the district court abused its discretion by refusing to instruct the jury on Graham's defense of equitable estoppel. Graham contends that evidence in the record supports an estoppel instruction and that the district court's failure to instruct the jury in this respect had a probable effect on the verdict.

"A decision by a district court to refuse a requested jury instruction is reviewed for abuse of discretion." *Weitz Co. v. MH Washington*, 631 F.3d 510, 533 (8th Cir. 2011). "A party is entitled to have an instruction setting forth its theory of the case if the instruction is legally correct and supported by the evidence." *Bursch v. Beardsley & Piper*, 971 F.2d 108, 112 (8th Cir. 1992).

Graham contends that the district court erred in refusing to instruct the jury on its defense of equitable estoppel. The estoppel instruction tendered and refused by the district court centered on H&S's alleged failure "to disclose to Graham the April 6, 2010, report of Dr. Marion Russo or the May 20, 2010, e-mail from John Wilson to Joseph Dittmeier." But on appeal, Graham shifts its theory with respect to equitable estoppel and argues that it was entitled to an instruction not based on H&S's failure to disclose, but on evidence that H&S made false representations which Graham relied upon to its detriment. Because the district court refused to submit an estoppel instruction based exclusively on failure to disclose, any error in refusing the instruction cannot be predicated on evidence of affirmative representations made by H&S.

Moreover, to the extent that Graham argues that the district court should have submitted the general equitable estoppel instruction it filed with the district court that addressed both failure to disclose *and* representations, that instruction was never tendered nor refused by the district court. Because Graham voluntarily withdrew that instruction at the January 16, 2013, charge conference, the district court made no decision on whether or not to submit the general estoppel instruction. Therefore, we have no basis for concluding that the district court erred. *See Schoolfield v. Rhodes*, 82 F. 153, 156 (8th Cir. 1897) (concluding that the district court "committed no error" because the issue "was never presented to it and it made no ruling upon it; and there is therefore no ruling before us to review, and no error to correct").

### 3. Failure to Instruct on Mitigation

Graham also argues that the district court abused its discretion in refusing to instruct the jury on its defense of failure to mitigate. The district court did err in this regard.

Under Missouri law, "one damaged by breach of contract must make reasonable efforts to minimize resulting damages." *Richardson v. Collier Bldg. Corp.*, 793 S.W.2d 366, 375 (Mo. Ct. App. 1990). "[A] party may not recover damages the party 'could have avoided without undue risk, burden or humiliation.'" *Harvey v. Timber Res., Inc.*, 37 S.W.3d 814, 819 (Mo. Ct. App. 2001) (quoting Restatement (Second) of Contracts § 350(1) (1981)).

Graham requested that the following mitigation instruction be submitted to the jury with respect to H&S's breach of contract claim:

> If you find in favor of Hammer & Steel, you must find that Hammer & Steel failed to mitigate damages if you believe:
>
> First, Hammer & Steel replaced the second broken Kelly bar on the Sany SR 250 drill rig with the repaired Kelly bar that had been tested

by Dr. Marion Russo and / or Hammer & Steel failed to disclose to Graham the May 20, 2010, e-mail from John Wilson to Joseph Dittmeier, and

Second, Hammer & Steel in one or more of the respects submitted in the above paragraph, thereby failed to use ordinary care, and

Third, Hammer & Steel thereby sustained damage which would not have otherwise occurred.

Record evidence shows that in April 2010, H&S hired Quality Testing Services, Inc., to determine the cause of the first Kelly bar break. Marion Russo, the engineer who performed the testing, issued a report that called into question the viability of the metal that composed the Kelly bar. Two days after the second Kelly bar break, John Wilson, a salesperson for the company that sold the drill to H&S, sent an email to Joseph Dittmeier, H&S's co-owner, stating that Graham's drilling exceeded the capacity of the leased drill and that "[o]ther damage could also result from using the machine in excess of its rated capacity." H&S did not inform Graham of the Russo report or Wilson's email. From this evidence, a jury could reasonably infer that Graham would not have continued to operate the leased equipment had Graham disclosed the Russo report or the information in Wilson's email, thereby reducing H&S's damages under the lease agreement. Further, if H&S knew of these equipment limitations prior to the first Kelly bar break, the defense of mitigation could affect H&S's recovery of contractual damages.[2]

We conclude that the district court abused its discretion in refusing to instruct the jury because Graham's proposed mitigation instruction is legally correct and there is evidence to support it. *Bursch*, 971 F.2d at 112; *see Friedman & Friedman, Ltd. v.*

---

[2]We note that as a basis for awarding Graham damages on its negligent misrepresentation claim, the jury found that H&S falsely represented to Graham that the leased equipment was appropriate for and capable of completing the drilling project.

*Tim McCandless, Inc.*, 606 F.3d 494, 501 (8th Cir. 2010) ("The refusal to instruct the jury on a defense that was supported by sufficient evidence to create a triable issue was an abuse of discretion."). Because the district court's refusal to instruct deprived the jury from considering a viable defense to H&S's breach of contract claim, the instructional error "was harmful, prejudicial, and reversible." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 714 (8th Cir. 2001). Therefore, we vacate the jury's award of $197,238 in favor of H&S on its breach of contract claim and remand to the district court for a new trial limited to the issue of damages. *See Smalley v. Duluth, Winnipeg & Pac. Ry. Co.*, 940 F.2d 296, 299 (8th Cir. 1991) (holding that the district court's error in instructing the jury with respect to mitigation warranted a new trial on the issue of damages).

### 4. Unclean Hands

Finally, Graham argues that the district court erred in denying JMOL in its favor on H&S's claim for the value of the auger because Graham's defense of unclean hands bars that claim. Graham contends that it lost the auger as a direct result of H&S's material misrepresentations regarding the suitability of the drilling equipment. Furthermore, Graham argues that the district court "was not free to ignore the jury's factual findings" regarding H&S's misrepresentations.

We reject Graham's argument. "The 'clean hands' doctrine does not bar a claim for money damages." *Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 788 (8th Cir. 2004) (citing *Marvin E. Nieberg Real Estate Co. v. Taylor-Morley-Simon, Inc.*, 867 S.W.2d 618, 626 (Mo. Ct. App. 1993)). "Only when a [party's] conduct is the source of the claim is the equitable claim barred." *Id.* (citing *Kay v. Vatterott*, 657 S.W.2d 80, 82 (Mo. Ct. App. 1983)). Here, H&S's claim for the value of the lost auger arises from its rental agreement with Graham. Indeed, H&S acknowledged and the district court found that the claim depended upon the validity of the rental agreement. Because H&S's claim sounds in contract, the source of H&S's right to recover the value of the auger stems from the parties' agreed allocation of risk—not

negligence on the part of H&S. *See id.* (concluding that a party's possible negligence did not bar its claim for money damages by virtue of "unclean hands" because the party's "right to proceed . . . sounds in the contract between the parties" and not in tort). Thus, the doctrine of unclean hands does not bar H&S's recovery of the value of the auger.

But that does not end our analysis. As discussed above, the jury should have been instructed as to Graham's mitigation defense, which applies to any potential damages arising from H&S's breach of contract claim. Because the claim for the value of the auger rests on the language of the rental agreement and is therefore a breach of contract claim, we conclude that on remand the jury should assess the extent to which H&S could have mitigated its damages under the rental agreement as to the loss of the auger. Accordingly, we vacate the district court's award in favor of H&S on the value of the auger in the amount of $52,387 and remand for a new trial on damages as to that claim.

## III.    Conclusion

We reverse the jury's verdict and judgment of $420,194.40 in favor of Graham and enter judgment in favor of H&S on Graham's claim for negligent misrepresentation as the claim is barred by the economic loss doctrine. We also vacate the jury award of $197,238 in favor of H&S on its breach of contract claim and vacate the district court's award of $52,387 in favor of H&S for loss of the auger and remand for a new trial on damages as to those claims. We observe that on remand, Graham's mitigation defense may reduce all, some, or none of H&S's damages depending on the evidence and the conclusions therefrom.

_____