John D. SEMIDA, Plaintiff–Appellant,

v.

Thomas R. RICE, Arab Essa Haid, Defendants–Appellees.

No. 88–3026.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1988.

Decided Dec. 20, 1988.

---

David Huntington Williams (Carol Lynne Eoannou, Williams & Eoannou, on brief), for plaintiff-appellant.

Ralph Nicholas Boccarosse, Jr. (Siciliano, Ellis, Dyer & Boccarosse, Fairfax, Va., on brief), Michael McGettigan (David C. Schroeder, Murphy, McGettigan & West, P.C., Alexandria, Va., James G. McCarney, Engel & Mulholland, New York City, on brief) for defendants-appellees.

Before WINTER, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

John D. Semida sued his former business associate Arab Essa Haid and an accountant employed by Haid, Thomas R. Rice, for defamation, for professional negligence on the part of Rice, for tortious interference with his business, and for conspiracy under Virginia Code § 18.2–499. Trial began before a jury, but the district court directed a verdict for both defendants on all alleged causes of action at the close of Semida's case.[1]

Semida appeals and we affirm.

---

1. In the district court Haid alleged a counterclaim for moneys due on a promissory note. Haid obtained judgment, but Semida does not appeal this part of the case.

## I.

John Semida began a business relationship with Arab Essa Haid in 1983. At that time, Semida was a representative for a U.S.-based trading company doing business in Somalia. Haid became the Somalian agent for this trading company earning commissions based on sales in that country. In the summer of 1984, Semida and Haid began discussions regarding the creation of a consulting firm to take advantage of United States Agency for International Development (USAID) projects in Somalia.

In February 1985, A.S. International (ASI) was incorporated. Prior to its incorporation, Semida and Haid held various discussions with USAID, the Small Business Administration (SBA), and The Information Processing Company (TIPCO) about work in Somalia. ASI became a subcontractor to TIPCO for work in connection with a SBA-financed project to be administered by USAID.

Negotiations between Semida and Haid regarding Haid's capital contribution to the corporation continued throughout 1985 and early 1986. Haid never signed the ASI stockholder agreement or contributed to its capital.

In approximately February 1986, Semida refused to pay invoices for furniture sent from a Kenya Company, Intereact, to ASI in Somalia. Semida had discovered numerous discrepancies between the invoices and the furniture which had been ordered. Haid was apparently affiliated with Intereact and was responsible for the order having been placed with them. Haid had also been living in Kenya for some time prior to coming to the United States in January 1986.

During this early 1986 time period, Semida endeavored to put various personnel in place for administration of the project and had submitted a list of proposed candidates to USAID for approval. Haid attempted to have two project personnel fired and replaced by two of his sons. Semida refused. Semida also intended to have the project manager be the sole-signatory on checks for disbursement of project dollars.

Sometime in March 1986, Haid took some of the financial books and records of ASI to defendant Thomas R. Rice, a CPA. Haid apparently asked Rice to examine these documents and provide information concerning financial problems at the company, any indication of dishonesty or wrongdoing, and financial controls or methods by which his interests could be protected.

Based upon his examination of the documents, Rice wrote a three-page letter to Haid dated March 20, 1986, which identified a number of accounting irregularities and thus potential problems at ASI. Rice also made six specific suggestions to address these concerns.

Semida first read Rice's letter on March 27 or 28, 1986, when it was presented to him by Haid. Semida then wrote a three-page memo to Haid explaining many of the irregularities identified by Rice. Semida also encouraged Haid to provide Rice with *all* the corporate records so that he could perform a complete audit and to arrange a meeting among the three of them and ASI's accountant. No such meeting was ever arranged and Haid never provided Rice with the additional records. Rice wrote another letter to Haid on April 1, 1986 in response to Semida's explanatory memo. Rice acknowledged the memo had cleared up some of the discrepancies, but indicated that others had been left unresolved.

On April 4 or 5, 1986, Semida met with Haid who explained that the additional materials had not been furnished to Rice and that he had not intended to create problems. Haid suggested that the whole matter could be put to rest if he was given signatory authority over the project funds. Semida agreed to this request. Semida never communicated directly with Rice and was not shown Rice's second letter at this meeting.

On April 12, 1986, Semida received a call from the project field manager who informed Semida that Haid had intercepted a courier letter intended for Semida. When confronted, Haid admitted that he had done so but refused to make the letter available. Semida and Haid agreed to terminate their

relationship several days later and to notify USAID that Haid was no longer working on behalf of ASI. In this regard, the State Department sent a cable to Somalia on April 18, 1986 (apparently following a call from Semida) and Haid wrote a letter on April 20, 1986. No explanation for the disassociation was given.

On April 29, 1986, USAID sent TIPCO a telex informing it that Haid had ended his affiliation with ASI. USAID also requested that TIPCO cease its recruitment activities under the SBA contract until the ramifications of the ASI–Haid split could be evaluated. On May 12, 1986, USAID sent another telex informing TIPCO that ASI was no longer an approved subcontractor as a result of USAID's receipt of information from a CPA indicating questionable accounting. USAID also encouraged a prompt audit by TIPCO.

Semida was apparently aware of the USAID cable referring to its receipt of information from a CPA no later than May 20, 1986. Semida met with TIPCO officers on May 20 and 26, 1986 to discuss the problem and reviewed the situation in a letter to TIPCO dated June 4, 1986. Semida repeatedly sought a full audit by TIPCO and/or USAID without success throughout late May and early June 1986. TIPCO formally terminated the ASI sub-contract on June 24, 1986 claiming that ASI was in default under various provisions of the agreement and that ASI was no longer a USAID-approved subcontractor. ASI has successfully pursued arbitration proceedings establishing that USAID and TIPCO improperly terminated the contracts.

Semida's complaint, filed June 18, 1987 in the District Court for the Eastern District of Virginia based on diversity jurisdiction, asserted four causes of action against defendants: (i) conspiracy to injure another in his reputation, trade or business under Virginia Code § 18.2–499; (ii) libel; (iii) tortious interference with contract (defendant Haid only); (iv) negligence in the performance of duties as an accountant (defendant Rice only). The district court granted a directed verdict at the close of Semida's

case with respect to all four causes of action.

With regard to the first cause of action, the district court found that there was "absolutely no indication" that defendants conspired willfully and maliciously to injure Semida in his reputation or business as required by statute. Regarding the libel claim, the district court held that it was barred by the applicable one-year statute of limitations in Virginia. Alternatively, the district court held that much of Rice's letter of March 20, 1986, was true, and that, taken as a whole, it was an expression of opinion. Third, the court also found that the letter from Rice to Haid enjoyed a qualified privilege as far as Rice was concerned.

The district court also held that the terminated contracts were between TIPCO and ASI and that Semida, as an individual, lacked standing to assert any tortious interference claim. Finally, the district court held that Rice owed no duty of care to Semida with respect to the March 20, 1986 letter because it was not foreseeable that the letter would be circulated and relied upon by persons other than Haid. During the trial, the district court barred and struck the testimony of Semida's accounting experts who sought to establish a standard of professional conduct under the circumstances.

In his appeal Semida contests the district court's adverse ruling on his alleged conspiracy cause of action. He also contends that all of its rulings with respect to the libel action were erroneous as well as its rulings on Semida's claim of negligence on the part of Rice and his claim of tortious interference with contract on the part of Haid.

## II.

■ We perceive no merit in Semida's conspiracy claim under Virginia Code § 18.2–499. As the district court correctly ruled, there is simply no evidence of any combination by Haid and Rice willfully and

maliciously to injure Semida. It is true that in *Greenspan v. Osherhoff,* 232 Va. 388, 351 S.E.2d 28 (1986), the Supreme Court of Virginia held that an action under § 18.2–499 would lie where one with malicious intent procures another to violate the statute and where the evidence shows that the procurer's "primary and over-riding purpose is to injure his victim in his reputation, trade, business or profession ..." 351 S.E.2d at 35–36. But there is no evidence that Haid employed Rice with this intent or for this purpose. The evidence is that Haid, an investor in and officer of ASI, employed Rice to review certain financial records to determine if there was any financial mismanagement of ASI. Until the review was made, it was totally unknown whether ASI was mismanaged. Haid could not have had the requisite intent when he had no knowledge of the result.

### III.

■ We also see no merit in Semida's contention that Rice can be liable to him for any negligence on the part of Rice in making his examination of the limited financial records to which he was given access. The district court, in our view, correctly ruled that Rice's duty to use professional care was owed only to Haid and not to Semida.

■ While we are unaware of any direct Virginia authority, there is a developing modern rule that an accountant may be liable for his negligence to a limited class of persons whose injury was reasonably foreseeable, as well as to his direct employer with whom he is in privity. *See e.g.,* Restatement (Second) of Torts § 552. However, it is unnecessary for us to decide if Virginia would adopt this view, because in all cases in which the requirement of privity as a condition precedent to recovery has been modified, the person seeking recovery from the accountant has been the party who relied on the accountant's misrepresentations. In these situations, the question is whether the plaintiff was entitled to rely on the accountant's statements under the circumstances of the particular case.

In the instant case, there was no detrimental reliance by Semida on Rice's report and comments. Rather Semida claims to have been injured as a result of the reliance of others on Rice's work product. There is no authority which would permit recovery under these circumstances. In short, Semida has no cause of action against Rice. In light of this conclusion, the district court did not commit reversible error in excluding expert testimony with regard to the standard of professional care governing Rice's conduct.

### IV.

We agree with the district court that Semida's libel action was barred by limitations. It is therefore unnecessary for us to consider whether Rice's report was true, an expression of opinion, or privileged.

■ In *Morrissey v. William Morrow & Co.,* 739 F.2d 962, 967 (4 Cir.1984), we concluded that "[t]he Virginia Supreme Court has consistently applied the one year statute of limitation in Va.Code 8.01–248 to defamation actions." (citations omitted) Semida does not advance any Virginia case suggesting that this is incorrect. The question then is when did Semida's cause of action arise. Rice's letter was written March 20, 1986; Semida became aware of it and the fact that it had been brought to the attention of USAID by late May 1986; suit was filed June 18, 1987.

It is clear that Semida knew of USAID's possession of and concern about "information from a CPA" suggesting improper accounting, etc. at ASI in late May 1986. Semida's June 4, 1986 letter to TIPCO is irrefutable evidence of this. Semida's argument to the district court and on appeal that his cause of action was not ripe because he could not be sure where this information came from is not credible. Semida was aware of only three CPA's who have ever looked at ASI's financial records, and

Semida testified that Rice was the only one who described ASI's books as a mess.

Nor is it necessary to be able to prove injury at the time of publication in order to establish a defamation cause of action. Thus, the absence of quantifiable harm as of June 4, 1986 does not mean that Semida's cause of action had not yet accrued. *Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296, 1300 (4 Cir.1983). Semida concedes the applicability of *Brown* on this point, but argues that it should not be followed because a "secret or otherwise inaccessible" defamatory communication would be insulated from liability. However, the argument is unavailing because Semida was completely aware of Rice's report letters and their review by USAID by June 4, 1986.

▪ To avoid the conclusion that his libel action is time-barred, Semida contends that there was a republication of the defamatory letter after June 18, 1986 (one year before suit was filed) which would constitute a separate defamation and thus a new cause of action. Semida argues that there was a republication in late June 1986 when Stephen Dean, a USAID employee stationed in Washington, D.C., sent the "whole contract file" to Somalia. This was done immediately prior to TIPCO's formal termination of the ASI subcontract.

We do not think that Dean's transmission of the contract file constituted a republication. First, it is clear that Dean himself would not be guilty of libel as the republisher. He had no reason to know of the defamatory contents of the file and did nothing to draw particular attention to the Rice letter. Restatement (Second) Torts § 581 ("[O]ne who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character." *See also* Illustrations 1–3). More importantly, the copy of Rice's letter sent by Dean is analogous

to multiple copies of the same edition of a book or magazine article. Rice's letter was republished at the time it was first distributed to USAID, and we think that multiple copies within the organization should be considered part of an aggregate communication for purposes of applying the single publication doctrine.[2] Under this doctrine, an aggregate communication is treated as a single publication for which only one action for damages can be maintained. Treatment as an aggregate communication is reasonable at least where the incidents of distribution are substantially contemporaneous with the original communication to the organization and where the distribution is confined to those persons in the organization having a direct interest in the matter. *See generally* Restatement (Second) Torts § 577A, especially comment d.

We therefore hold that, under Virginia law, Semida's alleged cause of action for libel was barred by limitations.

### V.

▪ Finally, we express our agreement with the district court that Semida lacked standing to assert any tortious interference claim with respect to the contract between TIPCO and ASI.

While there was evidence that Haid deliberately interfered with the ASI–TIPCO contract, his improper conduct gave no rise to a cause of action by Semida. Rather ASI was the injured party, and it has not joined in this litigation. It may well be, as Semida asserts, that ASI is in informal liquidation and Semida is its sole stockholder. But Semida has not brought a derivative action. He has sued in an individual capacity and not as trustee or liquidator of ASI. In addition he has not shown that ASI's claim, if any, against Haid has been distributed to him in liquidation. Indeed it is probable that if ASI were to recover from Haid, its recovery would be distributed to

2. The single publication rule set forth in Restatement (Second) Torts § 577A is followed in

Virginia. *Morrissey*, at 967.

its creditors and not to Semida personally as Semida seeks.

AFFIRMED.