# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1368

_____

Marilyn Dedmon,      *
     *
        Appellant,      *
     *      Appeal from the United States
     v.      *      District Court for the
     *      Eastern District of Arkansas.
Carolyn Staley, individually and in      *
her official capacity as the Pulaski      *
County Circuit Clerk,      *

        Appellee.

_____

Submitted: September 12, 2002
Filed: January 9, 2003

_____

Before HANSEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Marilyn Dedmon filed a First Amendment retaliation action against Carolyn Staley, the Pulaski County Circuit Clerk, alleging that Staley terminated her in retaliation for reporting that one of her coworkers was stealing witness fees. The jury returned a verdict in favor of Staley, and Dedmon filed a motion for a new trial,

which the district court[1] denied. Dedmon appeals, and we affirm the judgment of the district court.

Dedmon worked as an appeal transcript clerk in the Pulaski County Circuit Clerk's Office. On occasion, the county prosecutor would subpoena a clerk, directing the clerk to bring certain records to trial and testify as to their authenticity. The subpoenaed clerk is paid a five-dollar witness fee as compensation upon filing the subpoena and presenting a properly prepared witness fee certificate to the county treasurer's office. On August 14, 2000, Dedmon discovered evidence which led her to believe that one of her coworkers, Colleen Griffin, was stealing witness fees by falsifying witness fee certificates. Dedmon reported this to her immediate supervisor, Sherri Bruno. Bruno took no action on the report because she believed that Griffin had recently testified on several occasions and because Dedmon failed to inform Bruno that the witness fee certificates were not accompanied by the requisite documentation.

On September 22, 2000, Pam Heinley, another clerk, also discovered evidence that led her to believe that Griffin was stealing witness fees. Heinley reported this information to Bruno and showed her the allegedly falsified witness fee certificates. Bruno relayed this information to Janice Hay, the Deputy Clerk, and to Staley. At that time, Bruno did not inform Staley that Dedmon previously had made a similar allegation. Staley, Hay, and Bruno met with Griffin, who admitted to stealing the fees. Staley terminated Griffin shortly thereafter.

On November 27, 2000, Bruno and Hay informed Dedmon that she had been terminated. Although Bruno and Hay were the messengers, Staley made the decision to terminate Dedmon, as only she possessed the authority to terminate a clerk.

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

Dedmon filed a complaint in the district court, asserting, among other things, a First Amendment retaliation claim alleging that Staley had fired her in retaliation for reporting Griffin. At trial, Dedmon's counsel proffered a "cat's paw" instruction that the district court rejected. The instruction read: "If Plaintiff has demonstrated that Sherri Bruno had influence or leverage over the decisionmaker with regard to Marilyn Dedmon's discharge, and thus was not an ordinary coworker, you may impute Sherri Bruno's discriminatory attitudes to the decisionmaker." (Appellant's Sep. App. at 13.) The jury rendered a verdict in Staley's favor on the First Amendment retaliation claim. Dedmon filed a motion for a new trial, arguing that the district court erroneously refused to submit to the jury her proffered "cat's paw" instruction thereby precluding the jury from considering her theory of the case.[2]

---

[2]We possess serious doubt that Dedmon's proffered instruction correctly states the "cat's paw" rule. The rule provides that an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design. See Lacks v. Ferguson Reorganized Sch. Dist. R-2, 147 F.3d 718, 725 (8th Cir. 1998) (stating that where the decisionmaker made an independent determination as to whether the plaintiff should be terminated and did not serve merely as a conduit for the desires of those with unlawful motives, then the "cat's paw" theory must fail), cert. denied, 526 U.S. 1012 (1999); Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990). Assuming that the County, and not Staley, is Dedmon's employer, then Dedmon's instruction does not accurately state the law. Instead, it states that an otherwise innocent decisionmaker can be personally liable for the unlawful animus of another. Our "cat's paw" cases do not go that far; they merely state that an employer can be liable, under certain circumstances, where the formal decisionmaker is not the person who harbored an unlawful motive to terminate the employee. See, e.g., Kramer v. Logan County Sch. Dist. No. R-1, 157 F.3d 620, 624 (8th Cir. 1998); Lacks, 147 F.3d at 725; Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1057 (8th Cir. 1993). Although other circuits have stated that discriminatory or unlawful motive can be imputed to the formal decisionmaker, see, e.g., Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226-27 (5th Cir. 2000), we think that is only for the limited purpose of determining whether the employer could be held liable. We found

We review the district court's refusal to submit a requested instruction to the jury for an abuse of discretion. Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001), cert. denied, 122 S. Ct. 1358 (2002). Generally, we will affirm the district court when it declines to give an instruction that is unsupported by the evidence because such an instruction is "irrelevant to any finding the jury properly could make and [is therefore] a potential source of needless confusion." Hoselton v. Metz Baking Co., 48 F.3d 1056, 1063 (8th Cir. 1995).

Quite simply, there is no evidence that Bruno initiated, exercised, or even possessed any influence or leverage over Staley's decision to terminate Dedmon. Indeed, the evidence suggests that Bruno was not consulted or even aware that Staley was going to fire Dedmon until the time Staley had already made the decision. In addition, there is no evidence that Bruno harbored any unlawful animus toward Dedmon and sought to get her fired in retaliation for reporting Griffin. In that respect, the requested instruction was also objectionable because it ascribed "discriminatory attitudes" to Bruno without requiring the jury to find that Bruno, in fact, possessed such "attitudes." Also, upon close inspection, Dedmon's theory of the case makes little sense. The illogic of her position is revealed when juxtaposed with facts showing that Heinley, who also made a report against Griffin that ultimately led to Griffin's termination, was never disciplined. Although there is no evidence supporting the proposition that Dedmon was fired for illegal reasons, there is evidence indicating that Staley fired Dedmon for other reasons. The evidence indicates that Dedmon did not interact well with others. Bruno testified that one of Dedmon's trainees was reduced to tears and complained that Dedmon was mean to her. Bruno also testified that at least six of Dedmon's coworkers had made

---

no case suggesting that an otherwise innocent decisionmaker could be personally liable for the discriminatory motive of another. Although we believe that Dedmon's proffered instruction incorrectly states the law, we do not rely on this as a basis for our decision because even if Dedmon's proffered instruction is an accurate statement of the law, there is no evidence supporting the instruction as proffered.

complaints against Dedmon.  There is also evidence that Dedmon was unwilling to help out at the front counter and was unwilling to answer phones.  This testimony is substantiated by two somewhat unsatisfactory work evaluations.  An evaluation dated January 11, 1999, states that Dedmon needed to concentrate more on assisting within the office.  An evaluation dated February 26, 1999, states that Dedmon failed to address the problems cited in the January evaluation and that she needed to improve her cooperativeness and attitude.

In light of the evidence presented at trial and the dearth of evidence supporting the propositions that Bruno had an unlawful motive to have Dedmon terminated and wielded influence or leverage over Staley, we cannot say that the district court abused its discretion in refusing to submit the proffered instruction to the jury.  Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.