# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2915

_____

ACUITY, a Mutual Insurance Company

*Plaintiff - Appellant*

v.

Bryan C. Johnson, individually and doing business as BCJ; Western National
Mutual Insurance Company

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 6, 2014
Filed: January 15, 2015

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Acuity, a Mutual Insurance Company ("Acuity"), appeals from the district court's[1] judgment after a jury returned a verdict in favor of its opponents, Western

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

National Mutual Insurance Company ("Western National") and Bryan Johnson. We find no error and affirm.

## I. *Background*

Bryan Johnson owns and operates a small trucking business in Minnesota. During the relevant period, Johnson owned and operated 1986 and 1987 International semi-tractor trucks. Johnson insured his trucks through Acuity. However, Johnson only insured one truck at a time, depending on which truck he was actively driving.

On December 11, 2009, Johnson called Holden Agency, an agent of Acuity, and told them to switch insurance coverage from the 1986 to the 1987 truck. Inconveniently, the 1987 truck broke down the next day. On December 14, Johnson called Holden back and asked them to switch the insurance back to the 1986 truck.

Nearly a year later, on December 5, 2010, Johnson's 1986 truck, while pulling a trailer owned by J&B Trucking ("J&B"), collided with a vehicle driven by Penny Marlow. The J&B trailer overturned and landed on top of Marlow's vehicle causing her death. Western National insured the trailer. Johnson called Holden to report the accident but was informed that the 1987 truck was covered and that the 1986 truck was not covered by the policy. According to Holden's records, Johnson had called them in February 2010 and requested to switch coverage from the 1986 to the 1987 truck, as he had done on December 11, 2009. Johnson denied ever having made such a request. At trial, Johnson pointed to the irrationality of making such a change because the 1987 truck remained inoperable and Johnson operated the 1986 truck throughout 2010. Johnson also highlighted several pieces of evidence that made it unlikely that he would make such a change to the policy while he was actively driving the 1986 truck.[2]

---

[2]When Johnson renewed his Acuity policy in February 2010, the policy identified the 1986 International as covered. Johnson placed the proof-of-insurance card in the truck. Johnson applied for a weight increase permit with the state of

Acuity's Business Auto Policy terms state that: "For any covered *auto* you [Bryan Johnson] own, this Coverage Form provides primary insurance." Under the policy, covered autos included trailers attached to owned semi-tractors described in the policy declarations. Thus, Johnson's policy would also provide primary insurance for damage caused by J&B's trailer if the Acuity policy covered the 1986 truck at the time of the accident. Additionally, the Acuity policy contains an endorsement commonly referred to as the MCS-90, which provides public liability coverage for Johnson's operation as a trucker, even if his truck was not insured at the time of an accident.

On the other hand, the Western National policy issued to J&B states

[W]hile a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) *Excess while it is connected to a motor vehicle you* [J&B] *do not own.*

(2) Primary while it is connected to a covered "auto" you own.

(Emphasis added.) Notwithstanding, because Johnson was leasing the trailer, he would qualify as a permissive user under Western National's policy, which would require Western National to provide primary coverage to Johnson if he were not otherwise insured.

The key issue in this case is whether Acuity's insurance policy covered Johnson's truck and hence J&B's trailer as primary insurance at the time of the accident. Factually, the matter turns on whether Johnson directed Acuity's agent, Holden, to change the covered vehicle on the policy.

---

Minnesota in March 2010. In May of that year, he advised J&B that the truck he used was the 1986 truck, which was confirmed by a J&B representative.

Acuity brought actions against Western National and Johnson, alleging that the February 2010 change to the Acuity policy results in Western National becoming the primary insurer liable in the underlying tort action;[3] Western National and Johnson brought counterclaims seeking a declaration that Acuity was the primary insurer. Additionally, Western National and Johnson brought cross-claims against each other seeking declarations regarding Western National's liability in the event that Acuity was found not to be the primary insurer.

The pivotal factual issue was whether Johnson called Holden in February 2010 and took the 1986 truck off of the policy. If Holden mistakenly changed the policy without Johnson's consent, Acuity would have to provide primary insurance coverage for the 1986 truck and J&B's trailer, and Western National would provide excess insurance. Alternatively, if Johnson requested the February 2010 change and the 1986 truck was rightfully taken off the policy at Johnson's request, this would switch the roles—Western National would provide primary insurance coverage and Acuity would provide excess coverage under the MCS-90 policy.

Acuity and Johnson settled on the first day of trial. Acuity moved for the court to dismiss Johnson from the lawsuit arguing that Johnson no longer had an interest in the outcome of the case. The trial court denied the motion and allowed Johnson to participate as a party at trial because Western National's cross-claim against him remained pending. The court made this determination even though Johnson assigned his claims against Western National to Acuity in the settlement agreement, and Acuity agreed to indemnify Johnson from any liability assessed to him arising from Western National's cross-claim. The trial proceeded, and Johnson's attorney fully participated in opening and closing arguments, cross-examination of witnesses, and making objections.

---

[3]Penny Marlow's estate filed a claim against Johnson, which Acuity defended. Acuity paid $561,000 to settle the matter. Therefore, Acuity now seeks reimbursement of these damages.

Acuity also submitted a motion in limine to prevent Western National from asserting a contract reformation argument. Acuity asserted that Western National was seeking to rewrite the Acuity insurance policy, to which it was not a party, and thus lacked standing to do so. After settling with Johnson, Acuity argued that the only issue remaining before the court was one of law: specifically, whether Western National had standing to bring a contract reformation claim. If all that remained was an issue of law, a jury trial would be obviated. The district court disagreed and allowed the jury trial to proceed. The court viewed the parties' dispute as principally a factual issue turning on whether Johnson instructed Holden to change which truck he wanted insured. Thus, the court denied Acuity's motion and found that Western National had standing.

Consistent with its theory of the case, Acuity contended that the court should instruct the jury to decide whether Western National and Johnson carried their burden to show that the Acuity policy should be reformed to include the 1986 truck. Johnson and Western National disagreed, arguing that Acuity's misstatement of the issues would confuse the jury; after all, this was not a contract reformation case. Neither Johnson nor Western National presented evidence in support of contract reformation. Acuity's theory essentially assumes as fact that Johnson made the request to change insured vehicles. The court ultimately concluded that this crucial fact could not be assumed and framed the issue before the jury as a factual inquiry of whether Johnson had instructed Holden to remove the 1986 truck from the Acuity policy in February 2010; this jury instruction required Acuity to prove it modified the contract with Johnson's consent.

After a two-day jury trial, the jury returned a verdict in favor of Western National and Johnson, finding that Johnson did not request that Holden remove the 1986 truck from the Acuity policy in February 2010. Based upon this finding, the district court entered judgment in favor of Western National and Johnson, declaring that Acuity had to provide primary insurance coverage for the accident.

After losing at trial, Acuity sought a judgment as a matter of law (JMOL) under Rule 50(b) of the Federal Rules of Civil Procedure, or alternatively, a new trial under Rule 59. First, the district court rejected Acuity's motion for JMOL on procedural grounds pursuant to Rule 50(b) because Acuity did not move for a JMOL pursuant to Rule 50(a) during trial. The court also denied the motion on the merits because Acuity consistently misstated the issue; whereas Acuity framed Western National's claim as one of contract reformation to rewrite the insurance policy to add the 1986 truck, the real dispute was whether Johnson instructed Holden to remove the 1986 truck from the policy at all. Therefore, Acuity was not entitled to a judgment as a matter of law.

The court also denied Acuity's motion for a new trial because there was no error in the jury instructions. Acuity argued that the court should have instructed the jury that Western National bore the burden to prove the elements of contract reformation; again, the district court found that Acuity misstated the issue.

Acuity appeals the district court's decision to allow the jury trial to proceed after its settlement with Johnson. Also, Acuity argues that the district court erred by not including a jury instruction and a question on the special verdict form on contract reformation. Finally, Acuity argues that it was prejudiced by the district court allowing Johnson to participate as a party at trial after the two parties settled out of court.

## II. *Discussion*
### A. *Contract Modification or Contract Reformation*

Acuity continues to argue that this case centers on what it characterizes as Western National's attempt to reform a contract to which it is not a party. This is the lens through which Acuity views the entire case. The district court and the other parties hold an alternate view—this case turns on the determination of a key predicate fact: did Johnson direct Holden to switch coverage from the 1986 truck to the 1987 truck in February 2010. It would be premature to don Acuity's "reformation-colored"

glasses until that fact was known. If Acuity, through its agent Holden, modified the contract by switching coverage from the 1986 truck to the 1987 truck without Johnson's consent, the modification would be voided and the status quo that existed before the modification would be restored. Viewed in this manner, the court's several decisions against Acuity before, during, and after the trial are reasonable.

We review mixed questions of law and fact de novo. *Harrod v. Farmland Mut. Ins. Co.*, 346 F.3d 1184, 1186 (8th Cir. 2003). The district court's characterization of the case as one of contract modification, as opposed to contract reformation, is a question of law and fact for our review. The second issue, whether Western National had standing to bring a contract reformation claim, naturally depends on the correct characterization of the case.

As a threshold matter, Western National argues that Acuity's appeal on these issues is precluded because Acuity is appealing from the district court's order to deny a procedurally deficient motion for JMOL. We disagree. Acuity's motion for JMOL was merely the procedural vehicle that raised the above questions of law after trial. These issues were litigated before the trial even began and were preserved on appeal separate and apart from the motion for JMOL. *See Linden v. CNH America, LLC*, 673 F.3d 829, 832–33 (8th Cir. 2012) (rejecting the notion that postverdict motions are required to preserve issues on appeal and instead acknowledging the "well-accepted rule that an objection at trial generally preserves an issue for review on appeal").

Moving to the merits, Acuity contends that Western National argued for contract reformation from the case's inception and only changed its theory of the case at trial. Our review of Western National's pleadings reveals otherwise. Nearly six weeks before trial, Western National asserted in its statement of the case that "[t]here is only one factual issue for the jury to resolve," referring to whether Johnson had authorized Holden in February 2010 to take the 1986 truck off of his Acuity policy. Western National added that "[n]umerous legal consequences will flow from the jury's

-7-

answer [to this factual issue]" because if the jury found that Johnson did not authorize the change, then Johnson, as a matter of controlling Minnesota contract law, would not be held accountable for Acuity's mistake. *See Shake v. Westchester Fire Ins. Co.*, 196 N.W. 804, 805–06 (Minn. 1924) (finding that the original insurance coverage governed when there was a modification made to the coverage without the insured's consent); *Gresser v. Hotzler*, 604 N.W.2d 379, 384 (Minn. Ct. App. 2000) (finding that material changes to a contract without a party's consent, such as the delivery date, precluded contract formation). This pleading accurately describes Western National's legal theory that it pursued at trial. For this reason, the district court correctly rejected Acuity's motion in limine.

We next hold that Western National has standing as a potential excess insurer to challenge the interpretation and application of contract terms, even if it is not a party to that contract. *See, e.g.*, *Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, 517 F. Supp. 2d 1089 (D. Minn. 2007) (A lawsuit involving a primary insurer suing two excess insurers challenging, among other things, contract interpretation of the excess insurer's policies with the insured.). The rights and liabilities of an excess insurer are entirely predicated upon the rights and liabilities of the primary insurer. *See Rhone-Poulenc, Incl v. Int'l Ins. Co.*, 71 F.3d 1299, 1302 (7th Cir. 1995) (acknowledging the interlocking dependency of liability between an excess and primary insurer, stating that "a suit against an excess insurer cannot proceed in the absence of the primary insurer[ ] until the latter ha[s] acknowledged [its] liability to the insured or ha[s] been determined by a court to be liable to him"). Thus, Western National has standing to challenge the status of Acuity's insurance coverage because Western National's liability entirely depends on Acuity's obligations under its policy with Johnson.

Acuity's standing argument also lacks merit because the parties' claims against each other are exact opposites. Acuity asked the district court to declare that Western National was the primary insurer for Johnson's accident and that Acuity was merely

the excess insurer. Western National's counterclaim against Acuity asked for the exact opposite; it asked for the court to declare that Acuity was the primary insurer and that Western National was merely the excess insurer. Therefore, Western National's defensive strategy against Acuity would be the same as its offensive strategy against Acuity. The same legal theories and same facts would necessarily advance both fronts. As a result, whether Western National has standing to bring a counterclaim seeking to interpret Acuity's insurance coverage is inconsequential at most, given its defense against Acuity's opposite action would require the same issues to be litigated.[4]

Alternatively, Acuity argues that even if Western National did not plead for contract reformation in name, it is pursuing this remedy in substance. Acuity contends that *Kashmark v. Western Insurance Co.*, 344 N.W.2d 844 (Minn. 1984), supports this argument. In *Kashmark*, an insurance company denied coverage to its insured's son because the son got injured while occupying a non-owned vehicle. *Id.* at 846–47. The insured countered that he had advised the insurance company prior to the accident that he owned the same vehicle his son was driving when he was injured. *Id.* The lower court found for the insured, and stated that the policy should cover his son. Nevertheless, the Minnesota Supreme Court reversed, stating that while the insured did not ask or seek reformation of the policy, this was practically what the lower court was doing: it was rewriting the policy to include the insured's son. Therefore, the case was remanded and the insured was required to prove the elements necessary to reform the contract. *Id.* at 848. Acuity argues that Western National is attempting the same end-run pleading as the insured did in *Kashmark*. According to Acuity, Western National is, practically speaking, asking for the contract to be rewritten to erase the

---

[4]Ironically, if Acuity's argument were valid, it would preclude Acuity from bringing a claim against Western National. If excess insurers do not have standing to challenge the contractual interpretation of a contract between the insured and their primary insurer, then Acuity could not bring a claim regarding Western National's alleged primary coverage of Johnson because Acuity claims to be the excess insurer. Acuity's argument is logically self-defeating.

1987 truck and replace it with the 1986 truck. We find this logic unpersuasive because Johnson is asking for a materially different remedy than the insured in *Kashmark*. Johnson and Western National are not arguing for the 1986 truck to be *added* to the policy, but rather are asking that Acuity's mistaken removal not be enforced.

## B. *Jury Instructions*

"We review a district court's decision to give particular [jury] instructions for abuse of discretion." *Burry v. Eustis Plumbing & Heating, Inc.*, 243 F.3d 432, 434 (8th Cir. 2001). This standard considers whether "taken as a whole and viewed in light of the evidence and applicable law, [the court] 'fairly and adequately submitted the issues in the case to the jury.'" *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 995 (8th Cir. 1999) (quoting *White v. Honeywell, Inc.*, 141 F.3d 1270, 1278 (8th Cir. 1998)). Many errors in jury instructions are harmless, meaning we will "order a new trial only if the error 'misled the jury or had a probable effect on its verdict.'" *Burry*, 243 F.3d at 434 (quoting *E.I. du Pont de Nemours & Co. v. Berkley & Co., Inc.*, 620 F.2d 1247, 1257 (8th Cir. 1980)).

At trial, Acuity requested that the district court add a jury instruction that would put the burden of proof on Western National to prove the elements of contract reformation. Western National's counsel argued against such an instruction on the record because "this is not a reformation case." When Acuity similarly argued for a question regarding contract reformation to be put on the jury special verdict form, Western National's counsel stated "again, this is not a reformation case and we're very concerned that if that question [asking whether the insurance policy should be reformed] is put on the verdict form, that the jury would be confused. And the evidence hasn't shown any support for asking the jury that particular question." The court agreed, and denied Acuity's attempts to add a jury instruction and a question on the special verdict form regarding contract reformation.

Given our agreement with the district court that this case pivots on a single factual issue, we conclude that the district court submitted the correct issue to the jury in its instructions. We find no abuse of discretion.

## C. *Johnson's Participation at Trial*

Finally, Acuity argues that the district court erred in failing to dismiss Johnson as a party from the case in light of the settlement agreement between those parties. We review a district court's legal conclusions in a motion to dismiss a party de novo. *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Acuity requests a new trial on the basis of the error. However, a new trial is only an appropriate remedy when an aggrieved party proves prejudice, meaning that the result at trial would have been different if not for the district court's error. *See First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 769 (8th Cir. 2012) ("[W]e will only grant a new trial or set aside a verdict where the error prejudicially influences the outcome." (quotation omitted)); *see also Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 833 (8th Cir. 2005).

The district court decided not to dismiss Johnson from the case because "of the outstanding cross-claims" that Acuity's settlement agreement did not squarely settle. After review of the settlement agreement, we note Johnson "assign[ed] to Acuity . . . whatever claims and rights he has against Western National under the . . . Policy insuring J&B's trailer." This assignment of rights would include Johnson's cross-claim against Western National, which asserted that Western National would have to provide primary coverage insurance in the event that the 1986 truck was not covered by Acuity. Additionally, Acuity agreed to "defend and indemnify . . . Johnson from Western National's cross-claim," which covered any liability Johnson would have. Therefore, the court's logic that Johnson had "a right to participate at trial" because of

the outstanding cross-claims is greatly weakened.[5] That being said, on the facts of this case, we do not conclude that Acuity was prejudiced by Johnson's participation as a party at trial. Other than this deposition testimony, Johnson did not call any witnesses or submit any evidence. The effect of his participation at trial as a party was de minimis and did not adversely affect the jury's verdict.

### III. *Conclusion*

We agree with the decisions of the district court that the controversy boiled down to a factual issue of whether Johnson requested Holden to change which of his trucks was insured by Acuity. As a result, there were no errors in the court's jury instructions. Finally, the district court's decision to allow Johnson to participate at trial was also not erroneous. For these reasons, we affirm the judgment of the district court in favor of Western National and Johnson.

_____

[5]In all fairness to the district court, Johnson had not executed the settlement agreement at the time Acuity's motion to dismiss Johnson as a party was considered. The district court had reservations on considering the settlement agreement as it was because "there is no indication in the record before the Court as to why Johnson has not signed the agreement or if he now objects to any of the terms." Johnson signed the settlement agreement on the first day of trial and did not have any objections to the terms.