# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1972

_____

David Singer

*Plaintiff - Appellant*

v.

Jim Harris; Dennis Milligan, Individually and in his Official Capacity as Treasurer
of the State of Arkansas

*Defendants - Appellees*

John Does, 1 - 10

*Defendant*

v.

Arkansas Democrat-Gazette, Inc.; Michael Wickline

*Respondent*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 13, 2018
Filed: July 30, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

David Singer, a former employee of Arkansas State Treasurer Dennis Milligan, is appealing the district court's[1] grant of partial summary judgment to Milligan and his chief of staff, Jim Harris, as well as the court's denial of his motion for a new trial after an adverse jury verdict. Singer argues that summary judgment was inappropriate, that the district court committed several errors in instructing the jury, and that the district court incorrectly refused to admit certain evidence. We disagree and affirm.

## I. Background

In January 2015, Milligan hired Singer as his assistant for legislative affairs and communications. Originally, Singer was in charge of overseeing social media, but the assistant chief of staff, Grant Wallace, believed Singer was performing the duty poorly and assumed that responsibility himself. Singer was then reassigned to the treasurer's outreach program. However, Gary Underwood, Milligan's deputy chief information officer, soon relieved him of those duties as well.

On April 6, 2015, Harris sent an email to Jason Brady, the deputy chief of staff, discussing his concerns about Singer. Harris stated in the email that he was worried about Singer's mental health following the death of Singer's wife and that he made his female coworkers feel uncomfortable. Harris also said that he believed Singer was not a competent employee, and he was "at a loss as to what we need to do about [Singer]." Three weeks later, on April 27, Milligan fired Singer.

_____

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

The same day he was fired, Singer asked a friend to make a Freedom of Information Act ("**FOIA**") request for his personnel file. Soon, other media outlets, including Little Rock, Arkansas television station KATV, began making similar requests for Singer's file and for correspondence regarding Singer. Wallace, after consulting the Arkansas Attorney General's Office, decided to release Harris's April 6 email in response to the FOIA requests. Singer did not have the opportunity to object to the release of the email.

On April 30, Harris met with Marine Glisovic, a reporter for KATV. In an attempt to combat accusations that Singer made against him, Harris told Glisovic to make a verbal FOIA request for documents related to Singer. Upon her request, Harris handed her a red folder containing documents involving Singer, including the April 6 email.

In May 2015, Singer sued Harris in state court, in his individual capacity, for defamation. The following day, Milligan issued a statement supporting Harris. Singer amended his complaint, adding Milligan as a defendant, and the case was removed to federal court. As amended, Singer made four claims against Milligan and Harris in both their individual and official capacities: (1) that Milligan and Harris deprived him of a name clearing hearing to which he was entitled under the Fourteenth Amendment and the Arkansas Civil Rights Act; (2) that Milligan and Harris, in their official capacities, violated his rights under the Rehabilitation Act and Titles I and II of the Americans with Disabilities Act (the "**ADA**"); (3) that Milligan and Harris, in their individual capacities, defamed him, presented him in a false light, and invaded his privacy; and (4) that Milligan and Harris violated the Arkansas Whistle-Blower Act. Milligan and Harris moved for summary judgment on these claims.

The district court granted summary judgment in part and denied it in part. The court found that Milligan and Harris were not entitled to summary judgment on

-3-

Singer's Title I of the ADA claim because they failed to address these claims in their motion. The court also found Harris was not entitled to summary judgment on Singer's state law defamation, invasion of privacy, and false light claims because there was a genuine dispute of material fact as to whether Harris acted with malice. The district court granted summary judgment to the defendants on all remaining claims, including Singer's Rehabilitation Act Claim because, the district court found, the Treasurer's Office does not receive federal financial assistance and is thus immune from suit under the Rehabilitation Act.

The case proceeded to trial on the remaining claims. The jury found in favor of Milligan and Harris on Singer's claim under Title I of the ADA and in favor of Harris on each of Singer's state law claims. Singer moved for a new trial, which the district court denied. Singer now appeals.

## II. Discussion

Singer makes several claims on appeal. First, he argues that the district court erred in granting partial summary judgment to Harris on the defamation, false light, and invasion of privacy claims and in granting summary judgment to Milligan and Harris on Singer's Rehabilitation Act claim. Second, he asserts that the district court erred by giving an improper jury instruction regarding publication and by failing to give FOIA, joint agency, and "cat's paw" theory jury instructions. Finally, he claims the district court erred by excluding testimony regarding his whistle-blower activities.

### A. Summary Judgment

We review the grant of summary judgment de novo, Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018), viewing the facts in the "light most favorable to" the nonmoving party, Ibson v. United Healthcare Servs., Inc., 877 F.3d 384, 387 (8th Cir. 2017). We will find summary judgment appropriate "if the moving party shows that

there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." Bedford, 880 F.3d at 996.

### 1. Defamation, False Light, and Invasion of Privacy

It is not entirely clear what Singer is attempting to assert via his first argument. The district court denied Harris's motion for summary judgment on Singer's state law claims against him in his individual capacity. Singer alleges that "[t]he District Court granted summary judgment on the defamation claims on statutory immunity grounds, to the extent they related to the writing and initial transmission of the mail to Brady, and any discussions before Singer's termination, but not for going to Marine Glisovic and telling her to FOIA the email because it was the 'real story.'" Appellant's Br. at 29. This is incorrect. The district court did not partially grant summary judgment on these claims: it denied summary judgment as to all of the claims. Singer cites the district court's statement that "[m]ere proof that Harris sent the April 6 email would be insufficient to prove malice," for his proposition that the court granted summary judgment as to the writing and transmission of the email. This is not a summary judgment finding. The district court continued, stating that Harris acted outside the scope of his employment by seeking out a reporter and giving her the email, which "create[d] a genuine issue of fact as to whether Harris acted maliciously." Thus, the statement was simply a factual finding within the district court's larger analysis. Because the district court denied summary judgment on these issues, Singer's initial argument is without merit.

### 2. Rehabilitation Act

Singer argues that the district court erred when it found that Milligan, in his official capacity as Treasurer of the State of Arkansas, is immune from claims arising under the Rehabilitation Act. The Rehabilitation Act protects qualified individuals with disabilities from "be[ing] excluded from the participation in, be[ing] denied the

benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," solely based on his disability. 29 U.S.C. § 794(a). A program or activity includes "the operations of—a department, agency, special purpose district, or other instrumentality of a State or local government." Id. § 794(b).

In Jim C. v. United States, we held:

> By accepting funds offered to an agency, the State waives its immunity only with regard to the individual agency that receives them. A State and its instrumentalities can avoid Section 504 [of the Rehabilitation Act of 1973's] waiver requirement on a piecemeal basis, by simply accepting federal funds for some departments and declining them for others. The State is accordingly not required to renounce all federal funding to shield chosen state agencies from compliance with Section 504.

Jim C., 235 F.3d 1079, 1081 (8th Cir. 2000).

Singer argues that the State Treasurer has waived his immunity to Rehabilitation Act claims because he receives and distributes federal funds. Singer is correct that Arkansas law provides that it is "the duty of the Treasurer of State: (1) To receive and keep all the moneys of the state not expressly required by law to be kept by some other person; (2) To disburse the public moneys upon warrants drawn upon the Treasury according to law and not otherwise." Ark. Code Ann. § 25-16-604. However, Singer does not argue that the Treasurer receives federal assistance or uses federal funding in its operations. Rather, he asserts that the Treasurer waived his immunity to Rehabilitation Act claims because federal funds intended for Arkansas agencies that have requested federal assistance are deposited in the State Treasury and that the Treasurer "distributes" those funds to the agencies. We disagree.

-6-

The State Treasurer's Office does not accept federal assistance for itself. Thus the Treasurer does not make use of federal funds. Rather, it holds the funds for other agencies in Arkansas that have accepted federal assistance. Holding the funds for other agencies does not qualify as "receiving Federal financial assistance" under the statute. 29 U.S.C. § 794. The Treasurer is simply serving as a depository for other agencies in the state receiving federal financial assistance.

Additionally, we find that the Treasurer is not "distributing" funds in a way that makes it liable under the Rehabilitation Act. Singer points to Jim C. for the proposition that an agency that distributes federal funds can be held liable for claims arising under the Rehabilitation Act. In Jim C., we held that the Rehabilitation Act "covers only the individual agency or department that accepts or distributes federal funds." Jim C., 235 F.3d at 1081. The Third Circuit's decision in Haybarger v. Lawrence County Adult Probation and Parole, illustrates the meaning of an agency "distributing" federal funds in the context of the Rehabilitation Act waiver of immunity. Haybarger, 551 F.3d 193, 200 (3d Cir. 2008). There, the Third Circuit found that every subunit of the Department of Corrections was subject to suit because the Department of Corrections itself accepted and distributed federal funds to some, but not all, of its subunits. Id. Though one subunit may not receive federal funding, because it was part of the Department of Corrections which received and distributed federal funds, the subunit was no longer immune to Rehabilitation Act claims. Id.

We find that in this context, the word "distribute" under the Rehabilitation Act means accepting and allocating federal funds for the department's own use, not simply dispersing federal funds to departments that have accepted federal financial assistance. See id. Unlike the Department of Corrections in Haybarger, the Treasurer is not making decisions about which agencies or which subunits within certain agencies are going to receive federal funds and in what amount. Instead, the Treasurer is simply doing what he is bound to do by state law, dispersing federal

-7-

funds to the agencies that have elected to receive federal financial assistance. See Ark. Code Ann. § 25-16-604. Therefore, because the Treasurer neither accepted nor distributed federal financial assistance, he is not subject to the Rehabilitation Act. Accordingly, we find that the district court appropriately granted Milligan, in his official capacity as Treasurer of the State of Arkansas, summary judgment on Singer's Rehabilitation Act claim.

## B. Jury Instructions

Next, Singer argues that the district court erred in regards to three separate jury instruction rulings. "We review a district court's decision to give particular [jury] instructions for abuse of discretion." Acuity v. Johnson, 776 F.3d 588, 595-96 (8th Cir. 2015) (internal quotation marks omitted). Similarly, we review "[a] decision by a district court to refuse a requested jury instruction . . . for abuse of discretion." Graham Const. Servs. v. Hammer & Steel, Inc., 755 F.3d 611, 618 (8th Cir. 2014). We "consider[] whether taken as a whole and viewed in light of the evidence and applicable law, [the court] fairly and adequately submitted the issues in the case to the jury." Acuity, 776 F.3d at 595 (second alteration in original). Because "[m]any errors in jury instructions are harmless," we will not order a new trial unless "the error misled the jury or had a probable effect on its verdict." Id. at 596.

First, Singer argues that the district court committed reversible error when it instructed the jury that "[i]f the evidence shows that Marine Glisovic possessed [the email] before defendant Jim Harris delivered it to her, then you must find that Harris did not publish it to her."

In Arkansas, to prove defamation, the plaintiff must satisfy six elements:

(1) The defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the

statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages.

Little Rock Newspapers, Inc. v. Fitzhugh, 954 S.W.2d 914, 918 (Ark. 1997). Publication requires that the statement "be published or communicated to a third person to be actionable." Farris v. Tvedten, 623 S.W.2d 205, 206 (Ark. 1981).

Republication occurs when a person publishes defamatory statements that were already published at an earlier time. See Luster v. Retail Credit Co., 575 F.2d 609, 613 (8th Cir. 1978). The Arkansas Supreme Court has yet to decide whether plaintiffs can recover for unauthorized republications. Id.; Wal-Mart Stores, Inc. v. Lee, 74 S.W.3d 634, 650 (Ark. 2002). However, in Luster v. Retail Credit Co., we held that the Arkansas Supreme Court, if presented with the issue, "would hold that a defendant could be liable for unauthorized republications if such republication were reasonably foreseeable." Luster, 575 F.2d at 613. In Lee, the Arkansas Supreme Court noted this finding, and, without commenting on our holding, again declined to address the issue. Lee, 74 S.W.3d 650.

The Restatement (Second) of Torts' defamation elements and Arkansas law's defamation elements are essentially the same. Compare Restatement (Second) of Torts § 558 (1977), with Fitzhugh, 954 S.W.2d at 918. Additionally, the Arkansas Supreme Court has adopted the Restatement in other substantive areas, including invasion of privacy. Lee, 74 S.W.3d at 644. Because of the substantive defamation similarities, the Arkansas Supreme Court's history of adopting the Restatement, and its acknowledgment of our conclusion in Luster, we believe that it would adhere to the Restatement's position on publication: "[e]ach communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action

arises." Restatement (Second) of Torts § 577A cmt. a (1977).[2] However, "[a]ny one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication," and for "any single publication, only one action for damages can be maintained." Id. § 577A cmt. c.

The Fourth Circuit applied the single publication rule in a case where multiple copies of the same letter were distributed within a single organization. Semida v. Rice, 863 F.2d 1156, 1161 (4th Cir. 1988). Relying on the Restatement, the court found that multiple copies of the same letter distributed within the same organization "should be considered part of an aggregate communication for purposes of applying the single publication doctrine." Id. Furthermore, the court held that "[t]reatment as an aggregate communication is reasonable at least where the incidents of distribution are substantially contemporaneous with the original communication to the organization and where the distribution is confined to those persons in the organization having a direct interest in the matter." Id.

Here, we are faced with a strikingly similar situation. The parties contest whether Glisovic had already received a copy of the email when Harris gave her a file of documents, which contained the email, following her FOIA request, but the instruction is only problematic if the jury found that Glisovic already possessed a copy of the email. Assuming that Glisovic already possessed the email, we find that

---

[2]    On one occasion A says to B that C is a murderer. On a later occasion A repeats the same statement to B. On a third occasion A makes the same statement to D. Each of the three communications is a separate publication and C has three causes of action against A.

Id.

-10-

the instruction was not erroneous. The email in this case is similar to the letter in Semida v. Rice. The email that Harris gave Glisovic in the red folder was an exact copy of the email she already received through her FOIA request; Harris's distribution of the email was substantially contemporaneous with the FOIA distribution,[3] and the distributions were confined to a single organization. Accordingly, the email Harris provided Glisovic is treated as an aggregate communication and will not be considered a republication. See id. Thus, the jury instruction accurately stated the law, and we find that the district court did not abuse its discretion in giving Jury Instruction No. 13.

Second, Singer argues that the district court erred when it refused to supplement its invasion of privacy by public disclosure of private facts jury instruction with a FOIA jury instruction.[4] "A party is entitled to have an instruction setting forth its theory of the case if the instruction is legally correct and supported by the evidence." Graham, 755 F.3d at 618 (internal quotation marks omitted).

Again, Singer's argument regarding the FOIA instruction is muddy and difficult to understand. He appears to be arguing Harris violated the FOIA when Wallace released the email. He also argues that Harris was aware of the requirements for releasing documents under the FOIA. Thus, he asserts, the FOIA instruction informs the invasion of privacy by public disclosure of private facts instruction because Harris knew or should have known the facts in the email were private and not of public concern. This argument is unavailing. First, there is no claim against Harris for violating the FOIA. Second, Harris was not involved in the decision to release the

---

[3]Harris delivered a copy of the email to Glisovic only three days after Singer was fired and the first FOIA requests were submitted.

[4]Singer's proffered FOIA jury instruction briefly outlines the basis of the FOIA and the process and standard by which public officials determine whether information about a public employee should be disclosed following FOIA requests.

documents following the FOIA requests. Because Harris did not decide which documents to release or actually release the documents, he could not have violated the FOIA restrictions. Additionally, because Harris was not involved in the FOIA process, the FOIA instruction does not inform the invasion of privacy instruction. Accordingly, we find that the district court did not abuse its discretion by refusing to give a FOIA instruction. See id.

Third, Singer asserts that the district court abused its discretion when it refused to give a jury instruction on agency and the cat's paw theory in relation to his ADA claims. The cat's paw theory applies "[i]n the employment discrimination context . . . [when] a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." Qamhiyah v. Iowa State Univ. of Sci. & Tech., 566 F.3d 733, 742 (8th Cir. 2009) (internal citations and quotation marks omitted). "Pursuant to this theory, we have stated that an employer can be liable, under certain circumstances, where the formal decisionmaker is not the person who harbored an unlawful motive to terminate the employee." Id. (internal quotation marks omitted). In Dedmon v. Staley, we upheld the district court's refusal to give a cat's paw jury instruction where there was a lack of evidence that the plaintiff's supervisor harbored an unlawful motive for termination and the evidence at trial that the plaintiff's performance was poor and multiple co-workers complained about her supported the proposition that she was fired for appropriate reasons. Dedmon, 315 F.3d 948, 950-51 (8th Cir. 2003).

Singer argues that Harris harbored an unlawful motive to terminate him and that it was Harris's influence on Milligan that caused his firing—that Milligan was the cat's paw and firing Singer was actually Harris's decision. However, in light of the evidence and applicable law, we find that a cat's paw instruction would not have fairly and adequately submitted the issues to the jury. Milligan's entire executive team, including Brady, Wallace, Underwood, and Harris, testified that during

executive meetings they all communicated to Milligan that Singer was inadequately performing his job and was insubordinate and that he should be terminated. The trial transcript also reflects that Milligan gave Singer the benefit of the doubt and allowed him to respond to these criticisms. Milligan further testified that he decided to terminate Singer based on Singer's continual lack of producing positive results and his constant blaming of other people for that lack of positive results. Cf. id. (citing evidence that the plaintiff was fired because she "did not interact well with others," she was "unwilling to help" where she was needed, and that she "failed to address [these] problems"). He further explicitly testified that he never thought Singer was disabled or mentally ill and neither of those alleged thoughts played a role in his decision to end Singer's employment. Thus, the trial transcript reflects, without contradiction, that ultimately it was Milligan's independent decision to terminate Singer. Cf. Lacks v. Ferguson Reorganized School Dist. R-2, 147 F.3d 718, 725 (8th Cir. 1998) (finding that the cat's paw theory failed because the school board made an independent determination to terminate the plaintiff "and did not serve merely as a conduit for the desires of school administrators"). As such, the "cat's paw" theory does not fit this case, and we find the district court did not abuse its discretion in refusing to give a "cat's paw" jury instruction.

## C. Whistle-Blower Activities

Finally, Singer claims that the district court erred when it excluded evidence of Singer's whistle-blowing activities. We review "[e]videntiary rulings . . . for abuse of discretion, and we afford deference to the district judge who saw and heard the evidence." United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017) (internal quotation marks omitted). "We will reverse only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." Id. (internal quotation marks omitted). "A party may claim error in a ruling to exclude evidence only if . . . [the] party informs the court of its

substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a).

Singer argues that the district court inappropriately excluded evidence of whistle-blowing activities, but he fails to cite the record to show: (1) where he attempted to offer evidence of his whistle-blowing activities; (2) where the district court denied such evidence; or (3) where he made an offer of proof in order to preserve this argument for appeal. "We cannot tell whether the district court erred in a ruling if [the plaintiff] does not direct us to a place in the record where we can find it, and so we consider only those contentions that include appropriate citations." Manning v. Jones, 875 F.3d 408, 410 (8th Cir. 2017); see also ASARCO, LLC v. Union Pac. R. R. Co., 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs, hunting for truffles buried in briefs or the record." (internal quotation marks omitted)). Because Singer "does not identify where in the record the district court's ruling or rulings took place," we refuse to consider his argument. Manning, 875 F.3d at 411.

## III. Conclusion

For the foregoing reasons, we affirm the district court's decision in its entirety.

_____